IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Case No 12 C 4055 |
| | ) | |
| SHELIA CONNOLLY | ) | |
| | ) | |
| Debtor/Appellant, | ) | Underlying Case No 11 B 50291 |
| | ) | |
| -vs- | ) | Chapter 13 |
| | ) | |
| ELM, LIMITED; TOM VAUGHN, | ) | Honorable Edmond E. Chang |
| CHAPTER 13, TRUSTEE. | ) | |
| | ) | |
| Appellee. | ) | |

SHELIA CONNOLLY'S APPELLANT BRIEF IN SUPPORT OF HER APPEAL OF
BANKRUPTCY ORDER ENTERED MAY 14, 2012, GRANTING TOM VAUGHN, CHAPTER 13
TRUSTEE'S MOTION TO DISMISS FOR DENIAL OF CONFIRMATION OF CHAPTER 13
PLAN DATED JANUARY 29, 2012

Paul M. Bach
Penelope N. Bach
BACH LAW OFFICES
P.O. Box 1285
Northbrook, IL 60062
(847) 564 0808

## Table of Contents

**TABLE OF CONTENTS** ................................................................................................ II

**TABLE OF AUTHORITY** ............................................................................................ IV

**INTRODUCTION** ........................................................................................................ 1

**JURISDICTION** .......................................................................................................... 1

**STANDARD OF REVIEW** ........................................................................................... 1

**ISSUE ON APPEAL** .................................................................................................... 2

**STATEMENT OF THE FACTS** ................................................................................... 2

**ARGUMENT** ............................................................................................................... 4

   I. IN ILLINOIS, TITLE IS ONLY TRANSFERRED WHEN THE TAX DEED IS ISSUED, NOT WHEN THE PROPERTY TAXES ARE SOLD. ......................................................... 5

     *A. The Tax Sale Does Note Transfer Title* ............................................................ 5

     *B. Converting the Tax Purchaser's Lien into a Tax Deed is not a Ministerial Act* ............................. 6

     *C. Bankruptcy Court's Ruling is Based on a Misinterpretation of the Illinois Tax Sale Process* . 7

     *D. Bates Case relied Upon by the Bankruptcy Case was Incorrectly decided or is No Longer Applicable based on Seventh Circuit's Smith Case* ...................................................... 9

  II. DEBTOR'S CHAPTER 13 PLAN MAY MODIFY ELM'S LIEN BECAUSE DEBTOR HAD TITLE TO HER PROPERTY WHEN HER BANKRUPTCY CASE WAS FILED ............................. 10

  A. CHAPTER 13 ALLOWS DEBTOR TO MODIFY LIEN HOLDERS' RIGHTS AND CURE DEFAULTS. ........... 10

     *B. There is a No "Public Policy" Reason to Exempt Property Tax Claims from the Provisions of Chapter 13* .............................................................................................. 12

*C. There is no Fixed Time Period for Curing Defaults Under Chapter 13 and Congress Intended for Reorganizing Debtors to Have a Reasonable Time to Cure Default in the Payment of Secured Debts*................................................................................................................................................*14*

CONCLUSION ........................................................................................................................... **15**

## Table of Authority

### CASES

*Associates Commercial Corp. vs. Rash*, 520 U.S. 953, 957 (1997); 11 U.S.C. §1325(a)(5)(B). ------- 4

*City of Chicago vs. City Realty Exchange, Inc*. 127 Ill.App.2d 185 at 190 (1st Dist. 1970)------------- 7

*Hawkeye*, 378 Ill.App3d 842, 881 N.E.2d 576 (1st Dist. 2007) ------------------------------------------- 6

In *Rankin vs. DeSarno*, 89 F.3d 1123, 1127-28 (3rd Cir. 1996)-------------------------------------------13

*In re Application of the County Collector*, 295 Ill.App.3d 703, 710, 692 N.E.2d 1211, 1216 (1998).

------------------------------------------------------------------------------------------------------------12

*In re Bates*, 270 B.R. 455 (Bankr.N.D.Ill.2001) ---------------------------------------------------------- 9

*In re Bequette*, 184 B.R. at 336 ------------------------------------------------------------------------5, 6, 7, 8

*In re County Treasurer of Cook County*, 333 Ill.App.3d at 361, 775 N.E.2d at 90 ---------------------12

*In re County Treasurer*, 171 Ill.App.3d 644, 648, 525 N.E.2d 852, 854 (1st Dist. 1987) -------------- 6

*In re Dupage County Treasurer*, 63 Ill.App.2d 135, 139-140, 211 N.E.2d 127, 130 (2nd Dist. 1965) 12

*In re Frain*, 230 F.3d 1014, 1017 (7th Cir. 2000) -------------------------------------------------------- 1

*In re Hatcher*, 202 B.R. 626 (Bankr.E.D.Okla.1996), *aff'd* in part, 208 B.R. 959 (10th Cir. B.A.P.

1997), *aff'd* 133 F.3d 932 (10th Cir. 1998). -----------------------------------------------------------15

*In re Kasco*, 378 B.R. 207, 214 (Bankr.N.D.Ill 2007),-------------------------------------------------- 5

In re McKinney, 341 B.R. 896 (Bankr.C.D.Ill 2005)-------------------------------------------------------10

*In Re Midway Airlines,* 383 F.3d 663, 668 (7th Cir. 2003);-------------------------------------------- 1

In *Taddeo vs. Di Pierro* (*In re Taddeo*), 685 F.2d 24 (2nd Cir. 1982), ------------------------------ 11, 14

In *United Savings Assoc. vs. Timbers of Inwood Forest Assoc. Ltd.*, 484 U.S. 365, 371 (1988) ------13

*Johnson vs. Home State Bank*, 501 U.S. 78, 82 (1991) --------------------------------------------------14

*Matter of Rigdon*, 36 F.3d 1375 (7th Cir. 1994). ------------------------------------------------------- 1

McKinney, 341 B.R. at 898 --------------------------------------------------------------- 7, 10, 14

*McRoberts vs. S.I.V.I.*, 184 B.R. 327, 337 (Bankr. S.D. Ill. 1995) ---------------------------------------- 5

*Monreal vs. Sciortino*, 238 Ill.App.3d 475, 606 N.E.2d 328, 331 (1st Dist. 1992 --------------------- 8

*Nobelman vs. Am. Savings Bank*, 508 U.S. 324, 327-28 (1993). ------------------------------------ 13, 14

*Perry vs. Commerce Loan Co.*, 383 U.S. 392, 395 (1966) ------------------------------------------ 14

*Petition of Conrad Gacki Profit Sharing Fund*, 261 Ill.App.3d 982, 984 (3rd Dist. 1994) ------------- 5

*Pheonix Bond vs. Pappas*, 194 Ill.2d99, 101, 741 N.E.2d 248, 249 (2000) ------------------------------ 5

*Rash*, 520 U.S. at 964 ----------------------------------------------------------------- 4, 10, 11

*Smith vs. Sipi, LLC* (*In re Smith*, 614 F.3d 654 (7th Cir. 2010) reh'g denied (August 25, 2010) - 3, 8, 9

*Spachman vs. Overton*, 16 Ill.App.3d 385, 389, 306 N.E.2d 743, 747 (2nd Dist. 1974 ----------- 8, 10

*Thompson vs. GMAC*, 566 F.3d 699 (7th Cir. 2009) ------------------------------------------- 11

*Tidewater Finance vs. Moffett*, 356 F.3d 518 (4th Cir. 2004) ----------------------------------- 11

*United Savings Loan Assoc. vs. Timbers of Inwood Forest Assoc. Ltd.*, 484 U.S. 365, 371 (1988). -- 4

United States vs. Ron Pair Enterprises, 489 U.S. 235, 240 (1989) ------------------------------------- 13

*United States vs. Whiting Pools, Inc.*, 462 U.S. 198 (1983); --------------------------------------10, 11, 14

*Wells vs. Glos*, 277 Ill 516, 115 N.E. 658 ----------------------------------------------------------- 7

## STATUTES

11 USC 101(53). ------------------------------------------------------------------------------13

11 USC §1322 (b)(2) ------------------------------------------------------ 2, 4, 9, 10, 12,13,14, 15

11 USC §1322(b)(3) ------------------------------------------------------------------- 4, 10, 12

11 USC §1322(c)(1) ------------------------------------------------------------------------ 4

11 USC §1322(d). ------------------------------------------------------------------------14

11 USC §1325 ------------------------------------------------------------------------- 4, 5, 12, 14

11 USC §1325(a)(5) ------------------------------------------------------------------- 4, 5, 12

11 USC § 362(d)(1) ------------------------------------------------------------------- 13

11 USC 541(a)(1). ------------------------------------------------------------------- 10

28 U.S.C. § 158(a) ------------------------------------------------------------------- 1

35 ILCS 200/21-190 ------------------------------------------------------------------- 5

35 ILCS 200/21-250 ------------------------------------------------------------------- 5

35 ILCS 200/21-310(b)(1) ------------------------------------------------------------- 12

35 ILCS 200/21-350(b). ---------------------------------------------------------------- 6

35 ILCS 200/21-385 ------------------------------------------------------------------- 6, 8

35 ILCS 200/21-75. -------------------------------------------------------------------- 5

35 ILCS 200/22-30 -------------------------------------------------------------------- 6

35 ILCS 200/22-40 -------------------------------------------------------------------- 6, 7

35 ILCS 200/22-5 --------------------------------------------------------------------- 6

35 ILCS 200/22-85 -------------------------------------------------------------------- 7, 8, 9

*Federal Rule of Bankruptcy Procedure* 8013 ---------------------------------------- 1

Uniform Commercial Code 9-504, 9-505, 3B U.L.A 127, 352 (1992) ----------------------------------- 11

## INTRODUCTION

The bankruptcy court erred in denying Confirmation of the Debtor's Chapter 13 Plan for inability to file a feasible plan based on the issues of Illinois State Law in regards to Real Estate Taxes and ruled consequently that the Debtor could not modify the claim of Elm, Limited under 11 USC §1322(b)(2) by paying the secured claim in installments as proposed in the Chapter 13 Plan dated January 29, 2012.

## JURISDICTION

This Court has Jurisdiction for this Appeal Pursuant to 28 U.S.C. § 158(a), which provides that "[t]he district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders and decrees and with leave of the court from interlocutory orders and decrees, of bankruptcy judges."

## STANDARD OF REVIEW

When a district court reviews a decision of a bankruptcy court, it reviews the factual findings for clear error and its legal conclusions *de novo. Federal Rule of Bankruptcy Procedure* 8013*; See In Re Midway Airlines,* 383 F.3d 663, 668 (7th Cir. 2003); *In re Frain,* 230 F.3d 1014, 1017 (7th Cir. 2000); *and Matter of Rigdon*, 36 F.3d 1375 (7th Cir. 1994). Since the bankruptcy court made no factual findings and did not hold an evidentiary hearing, this Court's review of the issue on appeal is *de novo.*

## ISSUE ON APPEAL

Whether a debtor who has filed a Chapter 13 petition after a sale of delinquent real estate taxes and after the expiration of the period to redeem and before the issuance of the tax deed under state law, may modify the claim of the tax buyer under 11 USC §1322 (b)(2) by paying the secured claim in installments under the plan.

## STATEMENT OF THE FACTS

On December 15, 2011, Shelia Connolly (hereinafter called the "Debtor") filed a voluntary petition for relief under Chapter 13 of Title 11 of the United States Bankruptcy Code ("Bankruptcy Code"). *Record on Appeal (Hereinafter called "ROA") Page 1 (Docket) ROA Page 10 (Petition); ROA Page 348.*

This case was filed primarily for the purpose of saving the Debtor's Residence and to pay off the Tax Debt. The Debtor inherited fractional share of family home on her mother's death. The home is commonly known as 1636 Sycamore, Hanover Park, Illinois with a Property Identification Number 06-36-211-018-0000 (hereinafter called "the real estate"). *ROA Page 17; ROA Page 97; ROA Page 105; ROA Page 124; ROA Page 347.* The general real estate taxes for 2007 and 2008 were not paid; *ROA Page 98; ROA Page 105; ROA Page 146; ROA Page 348.* Elm, Limited (hereinafter called "Elm") purchased the delinquent property taxes at the annual tax sale. ROA Page 111 and 112; ROA Page 347. Elm has paid the subsequent real estate taxes. *ROA Page 105; ROA Page 111 and 112.*

The Debtor filed her Chapter 13 Petition subsequent to the last day the real estate taxes could be redeemed under state law. *ROA Page 348.* The Debtor listed in her schedules the real estate with no mortgage. *ROA Page 22; ROA Page 128;* The Debtor, on Schedule A, also noted that she holds only a fractional interest in the Real Estate for it is co-owned with her siblings. *ROA Page 17; ROA Page 124.* The Debtor initially listed Elm and the Cook County Clerk as secured creditor for the

amount of $28,662.57 and later amended that amount to $41,133.50 to include the 2007 to 2010 real estate taxes for the real estate. *ROA Page 22; ROA Page 128*; *ROA Page 162*.

The Debtor's Modified Plan, which was filed on January 29, 2012, proposed to pay $890.00 per month to the Chapter 13 Trustee until all claims were paid in full. *ROA Page 162*. This Chapter 13 Plan provided for payment of Elm's claim in the amount of $41,133.50 plus interest. *ROA Page 162*. Elm moved the Dismiss based on bad faith and because the deadline under state law for redemption of the delinquent taxes (but the tax deed had not been issued) has passed without payment. *ROA Page 105 and 146*. Elm did not object in writing and stated at the Confirmation Hearing on April 29, 2012 that Elm did not have an Objection to Confirmation of the Chapter 13 Plan dated January 29, 2012. *ROA Page 341*;

The Debtor disputed the issues of bad faith argued that based on *Smith vs. Sipi, LLC* (*In re Smith*, 614 F.3d 654 (7th Cir. 2010) reh'g denied (August 25, 2010) and other case law that real estate taxes purchased by Elm could be included in the Chapter 13 Plan and Elm's secured claim could be modified and paid in installments over the life of the Chapter 13 Plan. *ROA Page 192-93*; *ROA Page 351*.

A hearing on the Motion to Dismiss of Elm as well as Confirmation of the Chapter 13 Plan filed on January 29, 2012 was held on April 23, 2012. *ROA Page 5 (Docket)*. The court stated on the record its opinion and stated that the Chapter 13 case at bar was not filed in bad faith but denied Confirmation of the Chapter 13 Plan based on the court's rejection of the Debtor's position based on Smith and other case law and holding that the Debtor could not use a Chapter 13 Plan to pay sold prepetition real estate taxes when the redemption date had passed by the tax deed had not yet been issued under state law. *ROA Pages 347-353*.

On May 14, 2012 the Bankruptcy Court dismissed the Debtor's Chapter 13 case based only on Denial of Confirmation of the Debtor's Chapter 13 Plan dated January 29, 2012. *ROA Page 211; ROA Pages 363-371*. Debtor filed a Notice of Appeal on May 15, 2012 and May 16, 2012 (Debtor

3

used the wrong event in filing the Notice of Appeal and refiled the Notice of Appeal the following day.) *ROA Page 7 (Bankruptcy Docket Number 71); ROA Pages 210-11.*

## ARGUMENT

The reorganization chapters of the Bankruptcy Code allow debtors to retain property that could otherwise be taken by secured creditors or other lien holders. The lien holder is prevented from enforcing its lien against property of the debtor's bankruptcy estate, but must, in return, receive the value of its lien. The value of the interest to be compensated does not include the right to immediately foreclose. *United Savings Loan Assoc. vs. Timbers of Inwood Forest Assoc. Ltd.*, 484 U.S. 365, 371 (1988). A Chapter 13 plan, which pays lien holders the full value of their liens during the plan, will be confirmed. *Associates Commercial Corp. vs. Rash*, 520 U.S. 953, 957 (1997); 11 U.S.C. §1325(a)(5)(B).

When Connolly filed her bankruptcy, she owned a portion of her home, subject to a lien held by Elm, Limited (hereinafter called "Elm"). Elm had paid Connolly's delinquent property taxes at the annual tax sale; thus acquiring the county's tax lien on the property. Under Illinois law someone who acquires a tax lien by paying the delinquent taxes does not acquire an ownership interest in the underlying property until a court ordered deed is issued.

A debtor's Chapter 13 plan may modify the rights of creditors and provide for curing or waiving of default. 11 USC §1322(b)(2) and §1322(b)(3). Debtor's plan proposes full payment of the tax lien, with interest, paid in installments over the life of the plan, which is one option permitted by 11 USC §1325(a)(5)(B). This provision allows the debtor to modify a secured creditor's right by forcing it to accept payments through the debtor's Chapter 13 plan even though the secured creditor would not have to accept such treatment outside of bankruptcy. *Rash*, 520 U.S. at 957.

The 1994 Amendments to the Bankruptcy Code reinforced Chapter 13 as a mechanism for debtors to save their homes. The amendments added section §1322(c)(1) which provides that,

4

"*notwithstanding [11 U.S.C] §1322(b)(2) and applicable nonbankruptcy law*," debtors can save their

homes by using the provisions of Chapter 13 as long as the home has not been sold (emphasis

added).   Section §1322(c)(1) supersedes cases that had cut off homeowners' rights prior to a final

sale, regardless of the particulars of state law.  Since debtor's home had not been sold when she filed

her Chapter 13 case, 1322(c)(1) is an additional basis for confirming the debtor's Chapter 13 plan.

Since the debtor's plan complies with §1325(a)(5), and it was a confirmable plan the debtor's plan

should have been confirmed.

## I. IN ILLINOIS, TITLE IS ONLY TRANSFERRED WHEN THE TAX DEED IS ISSUED, NOT WHEN THE PROPERTY TAXES ARE SOLD.

The rights of property owners, who file bankruptcy during the pendency of a property tax

foreclosure, turn on the manner and timing of the transfer of title under state property tax law.

Under the Illinois Property Tax Code (35 ILCS 200/1-1, *et. seq*.), Illinois transfers title only when the

county clerk issues the deed on the order of court. *Pheonix Bond vs. Pappas*, 194 Ill.2d99, 101, 741

N.E.2d 248, 249 (2000); *McRoberts vs. S.I.V.I.*, 184 B.R. 327, 337 (Bankr. S.D. Ill. 1995) ("*In re

Bequette*").

### A. The Tax Sale Does Note Transfer Title

In Illinois, taxes on real property become a lien against the property in the year that the taxes

are assessed. 35 ILCS 200/21-75.  If the assessed taxes are not paid, they are offered "for sale" at a

tax sale.  35 ILCS 200/21-190.  This "sale" has no effect on the owner's title to the underlying real

property as both equitable and legal title remains with the owner of the real property.  *Petition of

Conrad Gacki Profit Sharing Fund,* 261 Ill.App.3d 982, 984 (3rd Dist. 1994); *In re Kasco*, 378 B.R.

207, 214 (Bankr.N.D.Ill  2007), *aff'd*, No 07 7220 (N.D.Ill. 8/14/2008); *In re Bequette*, 184 B.R. at

336.  The purchaser from this "sale" (hereinafter called "tax purchaser") receives a certificate of

purchase from the County Clerk. 35 ILCS 200/21-250. This certificate "gives the tax purchaser the right to receive payments if the property is redeemed." *In re Bequette*, 184 B.R. at 336.

After the date of sale, the property owner has 2 years to prevent loss of the property by paying the delinquent taxes, plus interest and penalties. 35 ILCS 200/21-350. This is referred to as the "period of redemption." For certain residential properties the period is 2 years and 6 months. 35 ILCS 200/21-350(b). Either period is extendable by the tax purchaser, 35 ILCS 200/21-385, and by the Illinois courts as equity demands. *In re County Treasurer*, 378 Ill.App.3d 842, 881 N.E.2d 576 (1st Dist. 2007) (hereinafter called "Hawkeye"). "Illinois law traditionally favors redemption and seeks to give a liberal construction to the redemption laws, as long as the tax purchaser suffers to injury." *Id*. At 847, 881 N.E.2d at 581, citing *In re County Treasurer*, 171 Ill.App.3d 644, 648, 525 N.E.2d 852, 854 (1st Dist. 1987).

### B. Converting the Tax Purchaser's Lien into a Tax Deed is not a Ministerial Act

To obtain title to the real property, the tax purchaser must petition the Circuit Court for a tax deed. 35 ILCS 200/22-30. The statutory requirements to obtain a tax deed include serving several notices on the property owner and certain other persons at specified times before the expiration of the period of redemption. See 35 ILCS 200/22-5 and 22/30. The tax purchaser must prove to the court that it has correctly provided proper notice and followed the procedures for obtaining a tax deed.

The petition must be filed three to six months prior to the expiration of the redemption period. 35 ILCS 200/22-30. If the purchaser files too early, or too late, the tax purchaser cannot obtain a tax deed. Thereafter, when the redemption period expires with the property being redeemed, the real property owner is left with "bare legal title to the property." *In re Bequette*, 184 B.R. at 337. If the tax purchaser proves that the taxes are unredeemed at the end of the redemption period, and that the other statutory requirements have been met, the Court may enter an order directing the county clerk to issue a tax deed to the tax purchaser. 35 ILCS 200/22-40. At this stage

6

of the process, the Illinois courts have retained the power to extend the redemption period as equity

demands. *Hawkeye*, 378 Ill.App.842, 881 N.E.2d 576. The power to extend the redemption period

arises in part from the fact that the expiration of the redemption period does not transfer title. Legal

title does not transfer to the tax purchaser until a tax deed is issued. *In re Bequette*, 184 B.R. at 337.

In *Wells vs. Glos*, 277 Ill 516, 115 N.E. 658 (1917) the Illinois Supreme Court stated, "A

certificate of purchase for delinquent taxes is a species of personal property, assignable by

endorsement; but until expiration of the period of redemption and issuance of the tax deed based on

it, no interest equitable or legal is acquired on the land described in the certificate." See *City of

Chicago vs. City Realty Exchange, Inc.* 127 Ill.App.2d 185 at 190 (1st Dist. 1970). The Central

District's Chief Bankruptcy Judge Perkins in McKinney, 341 B.R. 897, 898 stated:

> It is the tax deed alone that conveys title to the property and gives the tax deed grantee the
> right to possession (35 ILCS 200/22-40(c)). Until the tax deed is issued, title, the right to
> possession and all other incidents of ownership remain with the debtor. Moreover, unless the
> tax buyer obtains and records the tax deed within one year after the time for redemption
> expires, his rights become "absolutely void." (35 ILCS 200/22-85). These provisions refute
> the notion that the debtor's interest is lost automatically when the redemption period expires
> post-petition.

Judge Perkins plainly added the word "post-petition" because of the context of that case but the very

same reasoning, based on Illinois laws, also applies where the redemption period expires pre-petition.

Judge Perkins had made this clear earlier in his opinion:

> All of the incidents of ownership remain vested in the debtor including title, the right to
> exclusive possession, the right to income, the right to encumber and the right to sell. The
> debtor's interest is subject to divestment only upon the occurrence of certain future
> contingencies including a failure to redeem by the debtor or any lienholder, compliance by
> the tax buyer with all statutory requirements, and issuance of a tax deed by the court.

*McKinney*, 341 B.R. at 897.

### C. Bankruptcy Court's Ruling is Based on a Misinterpretation of the Illinois Tax Sale Process

The Bankruptcy Court mistakes the nature of the redemption period and the timing when title passes from the real property owner to tax purchaser. The Bankruptcy Court presumed that the redemption period is fixed and unalterable. That assertion does not reflect Illinois law. 35 ILCS 200/21-385 (redemption period extendable by purchaser); *Hawkeye*, 378 Ill.App.3d at 852, 881 N.E.2d at 585 (redemption period extendable by court as equity demands).

The Bankruptcy Court also confused the time when title transfers under Illinois Law. The Bankruptcy Court in its ruling held that when the redemption period ran the Debtor lost all interest in the real estate. In Illinois, a tax sale has no effect on title. Title remains in the owner of the real property. *In re Bequette*, 184 B.R. at 336. Therefore, in Illinois, it is clear that whatever is sold at tax sale, it is not an ownership interest in real property.[1]

Failure to obtain an order from the court for issuance of a tax deed, whether by failure to comply with the statutory requirements therefor or otherwise, leaves legal title to the real property in the owner. *In re Bequette*, 184 B.R. at 337. Contrary to the Bankruptcy Court's assertion, in Illinois title does not transfer until County Clerk issues the tax deed and it has been recorded. Id. 35 ILCS 200/22-85.

In *Smith vs. Sipi, LLC* (*In re Smith*, 614 F.3d 654 (7th Cir. 2010) *Smith*, the Seventh Circuit held while considering an issue relating to the timing of a Complaint for a Fraudulent Transfer that the critical date was the issuance of the tax deed and not the redemption date by has been suggested by Elm. In *Smith*, Judge Tinder of the Seventh Circuit stated, "Under Illinois law, a tax buyer's property interest is not perfected against a BFP until the recording of the tax deed. Prior to

---

[1] In fact, the exact nature of the interest of the interest sold appears ill defined in Illinois. It may personal property, as it has been defined as the "the right to receive payment if property is redeemed." *In re Bequette*, 184 B.R. at 336. "The fact that a tax petitioner may be deprived of deed cannot be considered an injury to him since his certificate of purchase give him no legal or equitable title in the land and his right to the land is no higher or more sacred than to the redemption money." *Spachman vs. Overton*, 16 Ill.App.3d 385, 389, 306 N.E.2d 743, 747 (2nd Dist. 1974), see also *Monreal vs. Sciortino*, 238 Ill.App.3d 475, 606 N.E.2d 328, 331 (1st Dist. 1992) ("The right of a holder of a tax certificate to receive a deed is subservient to the right of a person interested in the property to redeem.") Although the exact nature of the interest conveyed at a tax sale is complex, clearly that interest does not affect title.

recording, even though the period of redemption may have expired, the debtor still has title to and

ownership rights in the property and so could convey to a BFP a property interest superior to the tax

buyer's interest." Under *Smith,* it is the Debtor's position that the title and ownership rights as noted

by the Seventh Circuit gives the Debtor the ability and/or right to pay the delinquent real estate taxes

of Elm through a Chapter 13 Plan such as the January 29, 2012 Plan (which was denied Confirmation

for that reason alone).

**D. Bates Case Relied Upon by the Bankruptcy Case was incorrectly decided or is No Longer Applicable based on Seventh Circuit's Smith Case**

The Bankruptcy Court relied almost exclusively upon *In re Bates*, 270 B.R. 455

(Bankr.N.D.Ill.2001) in denying Confirmation of the Debtor's Chapter 13 Plan. In *Bates*, Judge

Wedoff was faced with a fact situation identical to the case before this Court in that the Period to

Redeem the Real Estate Taxes had passed prior to the filing of the Bankruptcy Case. Judge Wedoff

stated,

After the redemption period expires, the landowner can no longer avoid the issuance of a tax deed by
paying the redemption price. In effect, the tax purchaser has a right to the debtor's property,
contingent only on the tax purchaser's complying with the necessary procedures within the required
time. … In effect, a transfer of the landowner's rights occurs at the end of the redemption period if a
bankruptcy is not in place.

*Bates*, 470 B.R. at 469. It is the position of the Debtor that the *Bates* decision was incorrectly

decided based on the case law (*Bequette, McKinney* and *Smith*) and statutory authority (35 ILCS

200/22-85) cited above which find and/or hold that the Debtor's interest in the real estate does end

until the issuance of the tax deed thus allowing the Debtor here to modify Elm's secured claim

pursuant to 11 USC 1322(b)(2). *Smith* makes the holding in Bates incorrectly decided or no longer

applicable when the Judge Tinder of the Seventh Circuit stated,

Under Illinois law, a tax buyer property interest is not perfected against a BFP until the recording of
the tax deed. Prior to recording, even though the period of redemption may have expired, the debtor
still has title to and ownership rights in the property and so could convey to a BFP a property interest
superior to the tax buyer's interest.( *Smith*, 614 F.3d at 654)

The Bankruptcy Court, in its ruling, did not believe that the above statement by the Seventh Circuit effects *Bates*. However, it is important to point out that two of the cases referred to in *Bates* have been overruled by the *Smith* case. The statement above clearly states that a Debtor's rights do not end until the tax deed is issued. The fact that this statement comes out of a case dealing with a Fraudulent Transaction does not mean the statement by the Seventh Circuit means anything less than the plain meaning. This means that the Debtor had not lost her rights in the real estate upon the running of the redemption date and can maintain a Chapter 13 Plan to modify the claim of Elm pursuant to 11 USC §1322(b)(2)

## II. DEBTOR'S CHAPTER 13 PLAN MAY MODIFY ELM'S LIEN BECAUSE DEBTOR HAD TITLE TO HER PROPERTY WHEN HER BANKRUPTCY CASE WAS FILED

Once Debtor filed her bankruptcy petition, all of her property became property of the bankruptcy estate. 11 USC 541(a)(1), U*nited States vs. Whiting Pools, Inc.,* 462 U.S. 198 (1983); *In re McKinney*, 341 B.R. 896 (Bankr.C.D.Ill 2005).

The general rule is that a Debtor's Chapter 13 Plan can provide for a secured claim by modifying the claim and paying the value of the claim in installments. *Rash*, 520 U.S. at 964.

### A. Chapter 13 allows Debtor to Modify Lien Holders' Rights and cure Defaults.

The ability to modify the rights of creditors in a plan is a crucial feature of Chapter 13, as well as the other reorganization chapters, Chapter 11 and Chapter 12. *McKinney,* 341 B.R. at 898. Section §1322 (b)(2) states that a plan may "modify the rights of secured creditors." There are identical provisions in Chapter 11 and 12. If the Debtor is in default, the plan may provide for cure of waiver of any default. 11 USC 1322(b)(3).

The general rule is that as long as the secured creditor's lien has not been converted to a complete ownership interest before the bankruptcy petition has been filed, the property becomes part

of the bankruptcy estate.  11 USC 541(a).  The debtor's plan can modify a creditor's rights in the property of the estate.  A debtor's plan can go so far as modify a secured creditor's right of possession, requiring return of property lawfully repossessed in exchange for adequate protection in the plan.  *Whiting Pools*, 462 U.S. at 207-08, 212 (property seized pursuant to tax lien had to be returned); *Thompson vs. GMAC*, 566 F.3d 699 (7th Cir. 2009)(vehicle validly repossessed had to be turned over to debtor.); *Tidewater Finance vs. Moffett*, 356 F.3d 518 (4th Cir. 2004).  A plan can also prevent a forced sale by paying a secured debt over time, even if the debt has been accelerated and is due in full.  *Taddeo vs. De Pierro (In Re Taddeo)*, 685 F.2d 24, 29 (2nd Cir. 1982).

The Debtor's plan proposes that she will make monthly payments to pay off the lien that Elm has on her home.  The United States Supreme Court has observed that modifications of secured creditor's rights are inherent in Chapter 13 cases:

> In allowing Chapter 13 debtors to retain and use collateral over the objection of secured of secured creditors, however, the Code has reshaped debtor and creditor rights in marked departure from state law.  See, e.g. Uniform Commercial Code 9-504, 9-505, 3B U.L.A 127, 352 (1992). The Code's cram down option displaces a secured creditor's state-law right to obtain immediate foreclosure upon a debtor's default. (*Rash*, 520 U.S. at 964.)

In *Whiting Pools* the United States Supreme Court held that Congress had chosen not to insulate secured creditors from modification of their rights to a reorganization plan.  The Court said that for reorganization to have a reasonable chance of success:

> …all the debtor's property must be included in the reorganization estate.  This authorization extends even to property of the estate in which a creditor has a secured interest. §363(b) and (c); see H.R.Rep. No. 95-595, p. 182 (1977).  Although Congress might have safeguarded the interests of secured creditors outright by excluding from the estate any property subject to a secured interest, it chose instead to include such property in the estate and to provide secured creditors with "adequate protection" for their interests.  §363(e), quoted in n. 7, supra.  … (*Whiting Pools*, 462 U.S. at 203-4)

As discussed below, there are no exceptions that could apply to prevent debtor from modifying Elm's rights.

Just as the United States' non-bankruptcy remedy of possession could be removed, so to Elm can be denied its non-bankruptcy remedy of seeking a tax deed, as long as its lien is properly provided for in the debtor's Chapter 13 plan. Sections §1322(b)(2), §1322(b)(3) and §1325(a)(5) are specific provisions which set forth the rule for treatment of secured claims in a Chapter 13 proceeding. These specific provisions apply to Elm's secured claim and allow Debtor's plan to modify Elm's rights.

### B. There is a No "Public Policy" Reason to Exempt Property Tax Claims from the Provisions of Chapter 13

The cases hold that depriving a tax purchaser of the opportunity to obtain a tax deed is not even considered an injury to the tax purchaser. *Spachman vs. Overton*, 16 Ill.App.3d 385, 389, 306 N.E.2d 743,747 (2nd Dist. 1974). Illinois has a strong public policy in favor of redemptions by property owners before a tax deed has been issued. In a case involving contested redemption, the Illinois Appellate Court stated that the law:

> Looks with favor upon redemptions and give a liberal construction to the redemption laws unless injury results thereby to the purchaser at the tax sale. Here, the plaintiff, suffers no injury because of the effect of the trial court's order reimburses him for his expenditures with interest.(*In re Dupage County Treasurer*, 63 Ill.App.2d 135, 139-140, 211 N.E.2d 127, 130 (2nd Dist. 1965)).

"[T]he primary purpose of the tax sales provisions of the Property Tax Code is to coerce tax delinquent property owner to pay their taxes, not to assist tax petitioners in depriving the true owner of their property." *In re County Treasurer of Cook County*, 333 Ill.App.3d at 361, 775 N.E.2d at 90, citing *In re Application of the County Collector*, 295 Ill.App.3d 703, 710, 692 N.E.2d 1211, 1216 (1998).

The Illinois Property Tax Code recognizes that bankruptcy can alter a tax purchaser's rights. When the owner files bankruptcy after the tax sale but before a tax deed has been issued, the tax

purchaser has the option to request a sale in error. 35 ILCS 200/21-310(b)(1). Until a valid tax deed has been issued, the public policy of Illinois to preserve property ownership of the homeowner.

Additionally, other courts have refused to give tax purchasers such Elm any public policy consideration under the Bankruptcy Code. In *Rankin vs. DeSarno*, 89 F.3d 1123, 1127-28 (3rd Cir. 1996), Pennsylvania taxing authorities argued that their claims could not be modified pursuant to §1322(b)(2). The Third Circuit rejected their argument because Congress did not give secured tax claims any special status in Chapter 13 cases. *Rankin*, 89 F.3d at 1128.

The potential lost opportunity of the Tax Purchaser is not an interest that has to be protected under the Bankruptcy when it conflicts with the debtor's interest in preserving ownership. In *United Savings Assoc. vs. Timbers of Inwood Forest Assoc. Ltd.*, 484 U.S. 365, 371 (1988), a Chapter 11 case, the Court held that the value of the interest of a secured creditor that must be protected in a reorganization plan pursuant to 11 USC § 362(d)(1) does not include the right to immediately foreclose. As discussed previously, a tax purchaser suffers no legal injury when a tax deed is denied if he is reimbursed for his expenditures with interest.

As long as title has not been transferred by a tax deed; both Illinois and federal law place a higher value in the interest of the property owner in continued ownership over the tax purchaser's potential right to a tax deed.

### B. The Only Specific Prohibition against Modifying a Secured Claim in Chapter 13 Does Not Apply to a Tax Purchaser's Secured Claim.

Congress has insulated one category of secured claims from modification pursuant to §1322(b)(2). A Chapter 13 Plan cannot modify claims such as home mortgages that are secured only by a security interest in a debtor's home. 11 USC §1322(b)(2). When the Bankruptcy Code was enacted, Congress decided that these creditors' rights could never by modified, only cured. *Nobelman vs. Am. Savings Bank*, 508 U.S. 324, 327-28 (1993). These are the only secured creditors who have been given this special protection in Chapter 13 by Congress.

A tax lien is not a "security interest." *United States vs. Ron Pair Enterprises*, 489 U.S. 235, 240 (1989); 11 U.S.C. 101(50) and 101(51). It is a statutory lien. 11 U.S.C 101(53). The rights of holders of statutory liens, including taxing authorities, are subject to modification, including "cram down." *Whiting Pools*; *Rankin*, 89 F.3d at 1127-28. Tax Purchasers in Illinois, such as Elm, are not entitled to the special protection and modification of their secured claims found in 1322(b)(2). Since Congress did not extend special protection for home mortgages to include holders of tax liens, courts should not either.

### C. There is no Fixed Time Period for Curing Defaults Under Chapter 13 and Congress Intended Reorganizing Debtors to Have Time to Cure Payment of Secured Debts

11 USC §1322 and §1325 of the Bankruptcy Code allow the Debtor to modify claims and cure defaults. These sections place no specific time limit on the length of the cure period. The only time limit is the fact that the Chapter 13 Plan itself must be completed in five years. 11 U.S.C. §1322(d).

Chapter 13 allows consumer debtors to reorganize by using a flexible repayment plan. *Johnson vs. Home State Bank*, 501 U.S. 78, 82 (1991); *Nobelman*, 508 U.S. at 372.

Congress created Chapter 13 to give Debtors sufficient time to repay their debts. The ability to modify secured claims is "the most fundamental and powerful tool that a debtor possesses in each of the three reorganization chapters of the Bankruptcy Code." *McKinney,* 341 B.R. at 898. The further goal of a successful reorganization, debtors who are dealing with secured claim must be provided with the flexibility, as they are when assuming or rejecting contracts.

In *Taddeo vs. Di Pierro* (*In re Taddeo*), 685 F.2d 24 (2nd Cir. 1982), the creditor argued that because the debt has been accelerated pre-petition, the debtors could only cure as provided by state law. The Second Circuit observed that accepting this argument "would render the remedy in §1322(b) unavailable to all but a select number of debtors." That result "would be totally at odds

with the 'overwhelming rehabilitative purpose of Chapter 13.'" *Taddeo*, 685 F.2d at 29. The court stated that "[w]e do not believe that Congress labored for five years over this controversial provision only to remit consumer debtors – intended to be primary beneficiaries of the new Code – to the harsher remedies of state law. *Id*. At 25.

The time to cure when reinstating a delinquent mortgage is flexible, and can be as long as 60 months. See e.g., *In re Hatcher*, 202 B.R. 626 (Bankr.E.D.Okla.1996), *aff'd* in part, 208 B.R. 959 (10th Cir. B.A.P. 1997), *aff'd* 133 F.3d 932 (10th Cir. 1998). There is no basis in the Code for refusing to extend the same flexibility to cures for delinquent property taxes.

<u>CONCLUSION</u>

The bankruptcy court erred in denying Confirmation of the Debtor's Chapter 13 Plan based on the fact that the Debtor filed her Chapter 13 petition after a sale of delinquent real estate taxes and after the expiration of the period to redeem and before the issuance of the tax deed under state law and ruled consequently that the Debtor could not modify the claim of Elm, Limited under 11 USC §1322(b)(2) by paying the secured claim in installments as proposed in the Chapter 13 Plan dated January 29, 2012.

For all these reasons, stated above, Appellants pray that this Court reverse and or vacate the Order of the bankruptcy court, and find that Order Dismissing the Chapter 13 case entered on May 14, 2012 and the underlying Denial of Confirmation on April 23, 2012 was in error and that the Default to Elm, Limited can be cured through the Chapter 13 plan by this Debtor pursuant to 11 USC 1322(b)(2) and direct the Bankruptcy Court to Confirm the Chapter 13 Plan dated January 29, 2012 and reinstate the Automatic Stay as of May 14, 2012 and for any further relief this court deems just.

| | |
|---|---|
| Paul M. Bach – 06209530 | Respectfully submitted, |
| Penelope N. Bach – 06284659 | SHELIA CONNOLLY |
| Bach Law Offices | |
| PO BOX 1285 | By: _____/s/ Paul M. Bach___ |
| Northbrook, IL 60065 | One of Her Attorneys |
| (847) 564-0808 | |