**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

IN RE:                                    )
                                          )
SHEILA CONNOLLY                           )          **12-cv-4055**
                                          )
    **Debtor-Appellant**                   )
_____

**SHEILA CONNOLLY,**

    Debtor-Appellant,

        vs.

ELM LIMITED,

    Appellee/Cross-Appellant

_____

On appeal from a decision of the United States
Bankruptcy Court for the Northern District of Illinois
Case No. 11-50291
The Honorable Judge Carol Doyle, Judge Presiding
_____
_____

**BRIEF OF APPELLEE/CROSS-APPELLANT, ELM LIMITED**
_____
_____

HAROLD L. MOSKOWITZ
55 West Monroe Street
Suite 3950
Chicago, Illinois 60603
(312) 977-0223
Facsimile: (312) 201-1436
Email: hlmatty@aol.com
Attorney for Elm Limited

## TABLE OF CONTENTS

TABLE OF CONTENTS...............................................................................ii

TABLE OF AUTHORITIES........................................................................iv

JURISDICTIONAL STATEMENT................................................................1

ADDITIONAL STATEMENT OF THE ISSUES ON APPEAL.............................1

ADDITIONAL STATEMENT OF FACTS AND CASE SUMMARY....................2

SUMMARY OF ARGUMENT.....................................................................11

ARGUMENT.........................................................................................12

    I.     THE BANKRUPTCY COURT WAS CORRECT IN DENYING
        CONFIRMATION AND DISMISSING THE CASE......................................12

        A.     Tax Sales................................................................13

        B.     11 U.S.C. §1322 Provisions...........................................13

        C.     Cases in this District Refuse to Follow *Bates'* Rationale......................14

        D.     Even the Minority Cases Refuse to Allow the Use of a
             Chapter 13 Plan When the Case Was Filed after the
             Expiration of the Chapter 13 Plan.........................................18

        E.     *Smith* Does Not Change the Analysis.....................................20

        F.     *Butner* Demands a Clear Expression of Congressional Intent
             Before State Law Can Be Changed.........................................23

        G.     §1322©)(1) Has No Applicability to the Issues of this Appeal...........25

        H.     Argument Is Improper in this Court.......................................28

    II.    ORIGINAL AND AMENDED PLANS WERE NEVER
        CONFIRMABLE..........................................................................29

        A.     Chapter 13 Eligible Debtors.............................................20

        B.     Plan Improperly Failed to Pay Creditors the Liquidated Value of

       **Estate**........................................................................................................29

   **C.**  **Debtor Failed to Use All Available Income to Fund
       Plans**........................................................................................32

 **III.**  **THE BANKRUPTCY COURT ERRED IN DENYING ELM'S
    MOTION TO DISMISS AND NOT FINDING THAT THE DEBTOR
    ACTED IN BAD FAITH**........................................................................33

   **A.**  **Good Faith Requirement**.......................................................33

   **B.**  **Debtor's Conduct Meets Most of the Elements Establishing
       Bad Faith**.................................................................................35

   **C.**  **Debtor Has Never Committed to Pay Her Unsecured
       Creditors an Amount Not Less than the Estate Liquidation
       Amount**.....................................................................................38

**CONCLUSION**.........................................................................................................40

# TABLE OF AUTHORITIES

**CASES:**

*Babcock v. Veco Corp.*
99 C 5385, 1999 WL 1212556 (N.D. Ill. Dec. 15, 1999)...................................................35

*Bates, In re*
270 B.R. 455, 459-63 (Bankr. N.D. Ill. 2001).................................................12, 15, 18, 19

*Bequette In re*
184 B.R. 327 (S.D. Ill. 1995)..........................................................................................15

*BFP v. Resolution Trust Corp.,*
511 U.S. 531, 114 S.Ct. 1757, *reh'g denied*, 512 U.S. 1247,
114 S.Ct. 2771 (1994)..............................................................................................24, 25

*Blue, Mary L., In re*
247 B.R. 748 (Bankr. N.D. Ill 2000)...........................................................................15, 16

*Butler, In re*
171 B.R. 321, 326 (Bankr. N.D. Ill. 1994)........................................................................20

*Butner v United States,*
440 U.S. 49, 99 S. Ct. 914 (1979).............................................................................23, 24

*Chambers, In re*
140 B.R. 233 (N.D. Ill. 1992)..........................................................................................28

*Clark, In re*
738 F.2d 869 (7th Cir., 1984)...........................................................................................28

*Colon v. Option One Mortg.,*
319 F.3d 912 (7th Cir. 2003)...........................................................................................27

*Commings, In re*
297 B.R. 701 (Bankruptcy N.D. Ill 2003)....................................................................16, 18

*Cushing v. City of Chicago*
3 F.3d 1156, 1167 (7th Cir.1993)......................................................................................2

*Danaskos, In re*
254 B.R. 416, 421 (Bankr. N.D. Ill. 2000)........................................................................26

*Davenport, In re*
268 B.R. 159 (Bankr. N.D. Ill 2001)........................................................13, 16, 18

*Douthett v Winter*
108 Ill. 330 (Ill. 1884)........................................................................................36

*EEOC v. Sears, Roebuck & Co.*
839 F.2d 302, 309 (7th Cir.1988)..........................................................................2

*Facility Systems, Inc., In re*
101 B.R. 519 (N.D. Ill. 1989)..............................................................................18

*Gauthreaux, In re*
206 B.R. 502, 505 (Bankr. N.D. Ill. 1997)........................................................31n

*Graham v. Lennington*
74 B.R. 963, 966 (S.D. Ind. 1987)......................................................................28

*Harms,*
85 Ill.Dec. 331, 473 N.E.2d 930..........................................................................30

*Hood v Hall,*
321 Ill.App. 3d 452, 254 Ill.Dec. 473, 747 N.E. 2d 510 (4th Dist. 2001)........................15n

*Jackson, In re,*
176 B.R. 156 (N.D. Ill. 1994)..............................................................................15

*Johnson, In re*
724 F.2d 1138, 1140 (5th Cir. 1984)....................................................................20

*Johnson v. Fairco Corp.*
61 B.R. 317, 320 (N.D. Ill. 1986)........................................................................20

*Kasco, In re*
378 B.R. 207, 214 (Bankr. N.D. Ill. 2007)..........................................................20

*Kenitra, Inc., In re*
64 B.R. 841, 842 (9th Cir. BAP 1986).............................................................21n

*Leavitt, In re*
209 B.R. 935, 939–41 (9th Cir. BAP 1997), affirmed,
171 F.3d 1219 (9th Cir.1999)..............................................................................34

*Liptak, In re*

304 B.R. 820, 828 (Bankr. N.D. Ill. 2004)........................................................35

*Louisiana Industrial Coatings, Inc., In re*
    53 B.R. 464, 469 (D.La. 1985).................................................................29

*Love, In re*
    957 F.2d 1350 (7th Cir. 1992)...............................................33, 34, 35, 37

*Maniez v. Citibank, F.S.B.*
    404 Ill. App. 3d 941, 953, 937 N.E.2d 237, 248 (2010)........................30

*Matter of Chicago, Milwaukee, St. Paul & Pac. R. Co.*
    791 F.2d 524, 527 (7th Cir. 1986)..........................................................39

*McKeever, In re*
    132 B.R. 996 (Bankr N.D. Ill. 1991).......................................................15

*McNichols, In re*
    258 B.R. 892, 902 (Bankr.N.D.Ill.2001).................................................35

*Metz, In re*
    820 F.2d 1495, 1497 (9th Cir.1987)........................................................35

*Milne, In re*
    185 B.R. 280 (N.D.Ill.1995).....................................................................13

*Monetary Group, In re*
    91 B.R. 138, 140 (M.D. Fla. 1988)..........................................................29

*Murray, In re*
    276 B.R. 869 (Bankr. N.D. Ill. 2002)..................................................16, 17

*Newman, In re*
    903 F.2d 1150, 1152 (7th Cir.1990)..........................................................2

*N.R. Guaranteed Retirement, In re*
    112 B.R. 263, 276–77 (Bankr.N.D.Ill.1990)............................................35

*Partridge v. Berliner*
    325 Ill. 253, 257, 156 N.E. 352 (1927)....................................................30

*Pizza of Hawaii, Inc., In re*
    761 F.2d 1374, 1379 (9th Cir. 1985)..................................................28, 29

*Ratner, In re*
132 B.R. 728 (N.D. Ill. 1991)........................................................................28

*Rich, In re*
1994 WL 527161 1 (Bankr. N.D. Ill. 1994)...................................................15

*Sanders v. Venture Stores, Inc.*
56 F.3d 771, 773 (7th Cir. 1995)......................................................................2

*Schaitz, In re*
913 F.2d 452  (7th Cir. 1990)...................................................................33, 34

*Smith, In re*
286 F.3d 461, 468 (7th Cir. 2002).....................................................30, 33, 36

*Smith, In re*
848 F.2d 813 (7th Cir. 1988)..........................................................................33

*Smith, In re*
 614 F.3d 654 (7th Cir. 2010), reh'g denied (Aug. 25, 2010) ....................20, 21

*Smith, In re*
Bankruptcy Case No. 02-22481........................................................................27

*Smith v. Phoenix Bond & Indem.*
288 B.R. 793 (N.D. Ill. 2002).........................................................16, 147, 26

*Snodderly v. R.U.F.F. Drug Enforcement Task Force*
239 F.3d 892, 900 (7th Cir. 2001)....................................................................2

*Stump,In re*
280 B.R. 208, 214 n. 2 (Bankr.S.D.Ohio 2002)................................................34

*Stewart, In re*
190 B.R. 846, ..................................................................................................16

*In re TAK Broadcasting Corp.*
137 B.R. 728, 731, 1992 U.S. Dist. LEXIS 3459, Bankr. L. Rep.
(CCH) P74503 (W.D. Wis. 1992)....................................................................28

*Tynan, In re*
773 F.2d 177 (7th Cir. 1985) ...........................................................16, 18, 22

*United States v. Singer Mfg. Co.*

374 U.S. 174, 193, 83 S.Ct. 1773, 1783, 10 L.Ed.2d 823 (1963).........................................2

*Young, In re*
237 F.3d 1168, 1174 (10th Cir.2001)...............................................................34

**STATUTES, ORDINANCES, RULES**:

Federal:

11 U.S.C. §101(5).......................................................................................12, 21

11 U.S.C. §101(37)...........................................................................................12

11 U.S.C.§108(b)...............................................................................12, 16, 17, 22

11 U.S.C. §363(h)..............................................................................................30

11 U.S.C. §548..................................................................................................21

11 U.S.C. §1307(1)............................................................................................33

11 U.S.C. §1322(a)(1).........................................................................................31

11 U.S.C.§1322(b)(2)...........................................................12, 13, 14, 17, 19, 21

11 U.S.C.§1322©)(1)..................................................................................25, 26, 27

11 U.S.C. §1325(a)(4).....................................................................30, 36, 38

State:

Illinois Property Tax Code
35 ILCS §200/22-10 through 22-30.........................................................13, 22, 30

Illinois Mortgage Foreclosure Law
735 ILCS §5/15-1501, et seq...................................................................   28

Illinois Code of Civil Procedure
735 ILCS §5/12-903..........................................................................................36

## JURISDICTIONAL STATEMENT

Debtor Connelly assertions in her Appellant Brief about the jurisdiction for the Court's determination regarding this Appeal and this Court's determination of the issues herein are true, complete, and correct.

## ADDITIONAL STATEMENT OF THE ISSUES ON APPEAL

In addition to the issues listed in the Debtor's Appellant Brief, the issues also presented on this Appeal is as follows:

1.  Did the Bankruptcy Court err on January 12, 2012, when it agreed to extend the automatic stay.

2.  Did the Bankruptcy Court err on March 12, 2012 when it further continued the automatic stay indefinitely without ruling on Elm's then pending motion to dismiss.

3.  Did the Bankruptcy Court err on April 23, 2012 when it did not grant Elm's motion to dismiss the instant case because the Debtor had filed a case which could not confirm a plan of reorganization.

4.  Did the Bankruptcy Court err on April 23, 2012 when it did not find that the Debtor had filed the case in bad faith.

## STANDARDS OF REVIEW

The bankruptcy court's good faith finding is a purely factual finding evaluated under the clearly erroneous standard of review. *In re Smith,* 848 F.2d 813, 816, n. 2 (7th Cir.1988). The clearly erroneous standard requires the reviewing court to give great deference to the bankruptcy court, the trier of fact. Under this standard, if the trial court's account of the evidence is plausible

-1-

in light of the record viewed in its entirety, a reviewing court may not reverse even if convinced that it would have weighed the evidence differently as trier of fact. *EEOC v. Sears, Roebuck & Co.,* 839 F.2d 302, 309 (7th Cir.1988); *Matter of Love*, 957 F.2d 1350, 1354 (7th Cir. 1992). Indeed, reversal under the clearly erroneous standard is only warranted if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id. Matter of Love*, 957 F.2d 1350, 1354 (7th Cir. 1992).

On the other hand, conclusions of law of the bankruptcy, are subject to *de novo* review on appeal. *In re Newman,* 903 F.2d 1150, 1152 (7th Cir.1990). Also, the lower courts' conclusions with regard to the legal standard applicable to good faith determinations are questions of law reviewed under the *de novo* standard. *See United States v. Singer Mfg. Co.,* 374 U.S. 174, 193, 83 S.Ct. 1773, 1783, 10 L.Ed.2d 823 (1963).

In addition, a reviewing court generally may affirm any the lower court's decision on any ground that finds support in the record. *See Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 900 (7th Cir. 2001) citing *Cushing v. City of Chicago*, 3 F.3d 1156, 1167 (7th Cir.1993). See also *Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 773 (7th Cir. 1995).

## ADDITIONAL CASE SUMMARY AND
## STATEMENT OF FACTS

Appellee Elm Limited ("Elm") adds the following case summary and facts to those listed in Appellant Sheila Connolly's (the "Debtor") Appellant Brief ("Brief"):

At the time of the filing of this petition for relief (the "Second Case"), the Debtor was the owner of that parcel of real estate identified as P.I.N. 06-36-211-018-0000, otherwise commonly known as 1636 Sycamore, Hanover Park, Illinois (the "Property"). *See Debtor's Statement of Financial Affairs.* In 2008, Cook County sold the real estate taxes then due but unpaid by the

-2-

Debtor on the Property at its annual tax sale to Elm. In 2008, a proceeding in the Circuit Court of Cook County resulted which was entitled *In the Matter of the Application of the County Collector of Cook County, Illinois, for Judgment Against and the Sale of Lands and Lots Returned Delinquent for Nonpayment of General Taxes and/or Special Assessments for the Year 2006 and Prior Years; Petition of Elm Limited for a Tax Deed*, Case No 11 TCD 0392. *See Debtor's Prior Case, Statement of Financial Affairs, Dkt. No. 1.* The last day for the redemption of the real estate taxes was July 26, 2011. *See, Elm Motion to Dismiss, Motion to Lift Stay.* No such redemption was ever made. *See Elm Motion to Dismiss, Elm Motion to Lift Stay, Dkt. No. 62.* On December 15, 2011, the Debtor commenced this case by the filing of a petition for relief under Chapter 13. *See, Voluntary Petition for Relief, Dkt. No. 1.*

**Prior Case**

However, this was not the first time the Debtor filed a bankruptcy case to stop Elm from obtaining a tax deed on the Property. On July 25, 2011, the day before the redemption period was to expire, the Debtor filed a case, Case No. 11-30258, under the name of Sheila Beauchamp (the "Prior Case"). *See Prior Case Voluntary Petition, Dkt. No. 1.* In said Petition, the Debtor listed her interest in the Property as being a one-sixth joint tenant and that the interest was worth $27,500. She also listed the secured debt on the property to be approximately $28,663. *See Prior Case Voluntary Petition, Schedule A, Dkt. No. 1.* In her Schedule D, she listed the value of the entire Property as worth between $150,000-$180,000 and listed the Cook County Treasurer as being owed nothing. *See Prior Case Voluntary Petition, Schedule D, Dkt. No. 1.* The Debtor's Schedule F consisted mostly of a $24,000 non-dischargeable debt to the United States Department of Education, debts to banks for credit cards, and debts to various utilities. All told,

unsecured debt totaled $29,103. *See Prior Case Voluntary Petition, Schedule F, Dkt. No. 1.* On the date of filing, the Debtor was unemployed. *See Prior Case, Statement of Financial Affairs.* Her Schedule I showed her living with an older daughter and having total income solely from food stamps and disability payments totaling $766. Her Schedule J listed $1,686 in monthly expenses, of which $677 was allegedly for the monthly payment of real estate taxes and $67 for monthly payment of property insurance. It also included monthly payments for telephone, garbage, electricity and other utilities, although in her Schedule F (listing unsecured debt), she owed money to all such utilities and waste management providers. *See Prior Case Voluntary Petition, Schedule F, Dkt. No. 1.* Also on July 25, 2011, the Debtor filed a motion to pay the case filing fee of $272 in four installments of $68.50 each. *See Prior Case Dkt. No. 3.* The motion was granted.

On August 8, 2011, the Debtor filed her first Chapter 13 plan. The plan again listed only her and her daughter living together and provided that even though the Debtor had negative cash flow of $920, she would make plan payments of $100 for the first month, $800 for the next two months, and $875 for the following 34 months – almost all to pay Elm its claim plus interest at $3.5%. It also claimed that the Debtor's sons were going to move in with her to help keep the home by paying room and board of about $600 each per month (although this money was not listed on her Schedule I). Lastly, the Debtor's plan provided that regarding the approximate $30,000 in unsecured debt – including the $24,000 in non-dischargeable student loan debt – creditors would receive all of approximate $600 over the life of the plan *See Prior Case Chapter 13 Plan, Dkt. No. 12.* On September 22, 2011, Elm filed a motion to dismiss. *See Prior Case Motion to Dismiss, Dkt. No. 18.* It also filed an objection to the Plan. *See Prior Case Motion to*

-4-

*Dismiss, Dkt. No. 20.* On September 28, 2012, the Chapter 13 Trustee filed a motion to dismiss for failing to pay the installments for the filing fee. *See Prior Case Motion to Dismiss, Dkt. No. 16.*

In addition to pointing out the negative cash flow, the failure to make plan payments and the failure to pay the court filing fee, Elm's objection to the proposed plan and motion to dismiss made the following objections:

1. The Debtor's Schedule D listed Elm as a secured creditor in the amount of $28,662.57, although the records at the Cook County Treasurer's Office showed the then amount due as of the filing date to be $32,267.07;

2. Under the Illinois Property Act, since Elm also paid post-sale taxes for the Property, those post-sale taxes are due interest at the rate of 12% per annum and not 3.5% so that the Plan failed to pay Elm in full – let alone the interest rate due under Illinois law;

3. The Plan was, on its face, not feasible because even if her sons did actually pay $1,200 in rent (which they did not do), the total monthly income for the Debtor would be only $280 when the plan called for payments usually in excess of $800;

4. The Plan tried to pay only 2% on student loans which are, as a matter of Bankruptcy law, non-dischargeable;

5. The Plan and case had been filed in bad faith as there was no effort to comply with her responsibilities under the Code: no filing fee, no plan payments, and no proper and truthful Schedules;

6. Even if a majority of the unsecured debt were not non-dischargeable student

loans, the Plan made no effort to provide a reasonable return to the unsecured

creditors; and

    f.     As the redemption date, as extended by Section 108, had expired without there

being a redemption, the Debtor no longer has any interest in the Property.

*See Prior Case Motion to Dismiss, Dkt. No. 18; Prior Case Motion to Dismiss, Dkt. No. 20.*

During the five months the Prior Case was open, the Debtor never paid the remaining

three installments of the filing fee. Other than the first $100, she made no plan payments. *See*

*Prior Case Trustee Account, Dkt. No. 32.* She never made any real estate tax payments or

property insurance payments. *See Second Case Dkt. No. 30.* Finally, on November 23, 2011, the

Bankruptcy Court granted the Chapter 13 Trustee's motion to dismiss and ruled that Elm's

motion to dismiss was moot. *See Prior Case Order on Motion to Dismiss, Dkt. No. 30.*

**Second Case**

Although the Second Case was filed months later, the Schedules and Statement of

Financial Affairs filed by the Debtor were, in the most part, almost a mirror copy of the ones

filed in the Prior Case other than increasing the amount due for Student Loans (because of

interest), an increase in the amount the Property was allegedly worth, and that the Debtor had

failed to pay another installment of property taxes. *See Debtor's Voluntary Petition, Dkt. No. 1.*

In said new Petition, the Debtor still listed her interest in the Property as being a one-sixth joint

tenant, but increased the alleged value of that the interest to $30,600 (which corresponds to an

approximate $184,000 value to the entire Property). She also listed the secured debt on the

property to be approximately $33,790. *See Debtor's Voluntary Petition, Schedule A,, Dkt. No. 1.*

In her Schedule D, she again listed the value of the Property as worth $180,000, but now

included the Cook County Treasurer for notice purposes only while simultaneously admitting

owing it $5,127. However, the Debtor listed Elm as being owed the same $28,663 listed in her

Prior Case filed six months earlier. *See Debtor's Voluntary Petition, Schedule D, Dkt. No. 1.*

The Debtor's Schedule F consisted of the same debt listed in her Prior Case Schedule D almost

to the penny. The only change was an increase in the amount due on the non-dischargeable debt

to the United States Department of Education, but she included the same exact figures for the

debt to banks for credit cards and to the various utilities although, again, the Second Case was

six months later and although there would be additional interest due and utilities used in that

time (as well as current bills to use to prepare the Schedules). *See Debtor's Voluntary Petition,*

*Schedule F, Dkt. No. 1.* The Debtor's original Schedule I and J continued to only have the

Debtor and her 25 year old daughter living with her and now included only $810 in total alleged

rent from one of her children, $67 in property insurance, <u>no</u> real estate taxes to be paid and all of

$685 to pay creditors. *See Debtor's Voluntary Petition, Dkt. No. 1.* However, the Debtor's joint

tenants siblings are not listed as a possible debtor (if the Debtor's interest in the property is

solely used to pay the outstanding real estate taxes), nor as a possible creditor (if their interests

are used). *See Debtor's Voluntary Petition, Schedules B and F, Dkt. No. 1.*

The Debtor filed her original Chapter 13 plan on December 15, 2011, which provided

monthly plan payment of $685 for 60 months which would pay Elm at an interest rate of 2% (as

compared to the Prior Case proposal of 3.5%); pay the Cook County Treasure approximately

$5,100 also at 2%;' and pay unsecured creditors at 3% (or approximately $900). *See Debtor's*

*Chapter 13 Plan, Dkt. No. 7.*

On January 9, 2012, the Debtor filed a motion to extend the automatic stay. *See*

*Debtor's Motion to Extend, Dkt. No. 13.* In said motion, the Debtor acknowledged that this was the the seventh time that the Debtor filed a bankruptcy case (having filed in 1983, 1984, 1988, 1993, 1994 and twice in 2011). Other than stating there debtor received more income, the motion made no reference to any legal reason why the motion should be granted or any reference to *In re Smith*. In response, Elm objected and mentioned that the records of Cook County Recorder of Deeds showed that she is the owner in joint tenancy of the Property with six (and not five) other siblings. *See Response to Debtor's Motion to Extend, Dkt. No. 14.* It also objected that the Debtor had merely used the amount allegedly due Elm from the Prior Case and had not included interest and payments thereafter; that the interest rate to be paid Elm was deficient under Illinois law; that even applying the deficient interest rate proposed by the Debtor, there would be a deficiency in more than $3,700 in unpaid interest; that the claimed tightening of expenses from the Prior Case related to the failure of the plan to account for the payment of real estate taxes on the Property which is no "change in circumstances;" and that case law did not permit her to use a plan to redeem the taxes. *See Response to Debtor's Motion to Extend, Dkt. No. 14.* Debtor's reply acknowledged changes in her valuation of the Property, but claimed she was getting an appraisal[1] and that the failure of the first case was due to "misunderstandings and family problems." The Debtor also stated that she was waiting for Elm's proof of claim to get Elm's correct figures, although she does not explain why the figure could not have been obtained from the Cook County Treasurer's Office prior to filing or why interest could not be calculated. As to the student loans, Debtor claimed that paying them a minimal was not a problem "since [the Debtor was] not trying to discharge" those loans. Lastly, the Debtor painted a picture how

---

[1]None was ever produced.

the Property was really worth almost $60,000 less than the amount stated just three weeks

before, including deductions for costs of sale and the claimed right to a homestead exemption.

Lastly, in response as to why the Debtor's Schedules and Plan show no payment of ongoing real

estate taxes, the Debtor claimed one of her sons would pay the real estate taxes directly to the

County.[2]  *See Reply in Support of Debtor's Motion to Extend, Dkt. No. 17.*

On January 9, 2012, Elm filed its motion to dismiss.  *See Elm Motion to Dismiss, Dkt.

No. 15.*  On January 12, 2012, the Debtor filed amended Schedules a, C, D, I, and J and an

Amended Plan.  *See Debtor's Amended Schedules, Dkt. No. 21, 22, and 23.*  Said schedules

reduced the alleged value of the Property by $60,000, claimed a homestead exemption, listed the

Cook County Treasurer as now being not being owed anything, and increased the amounts due to

Elm to $41,133.50.  Her amended Schedules I and J added another son paying $710 to her on a

monthly basis (though decreasing the other son's monthly payment by $100), added $427 for

monthly real estate taxes as an expense, and still listed the Debtor and her adult child spending

about $4 a day in food.  The Amended Plan also still only stated that there were two people

living in the home and increased the monthly plan payment to $888.75.

At the hearing on the motion to extend the automatic stay, the Debtor revealed that there

was not two, but now more than eight people living at the Property, that the her siblings made

more than $9,000 gross per month; that the food expense is so low because they would get food

from a food pantry (although one would think that having people allegedly making $100,000 a

year makes one ineligible for food pantries); and that her son did not make the payments in the

---

[2]Though Debtor does not explain why said payment was not on the proposed plan which
specifically has a section to disclose said payments.

last case because she did not ask him. After the hearing, the Bankruptcy Court extended the automatic stay to the next hearing date two weeks later. *See Dkt. No. 45.*

In the meantime, the case was transferred to Judge Doyle as Judge Cox was on sabbatical. Although Judge Cox has previously only continued the automatic stay until such time as the Motion to Dismiss would be heard, Judge Doyle extended the stay indefinitely saying that she does not follow that continuing extension procedure of Judge Cox. However, on April 23, 2012, the Bankruptcy Judge denied confirmation saying that the redemption period had expired prior to the filing of the case and no plan could be used to pay off the real estate taxes in that case. *See Dkt. No. 51; Transcript, Dkt. No. 83.* As a result, the Chapter 13 Trustee moved to dismiss the case. *See Dkt. No. 52.*

In response to Elm's Motion to Dismiss, the Debtor made no argument alleging either that 11 U.S.C. §1322©) had any applicability to the issue of using a plan after the redemption period had expired pre-petition. The Debtor did not also claim that the term "claim" under the Code had been expanded.

On May 8, 2012, after the Bankruptcy Court refused to confirm the Amended Chapter 13 plan, Elm also filed a motion to lift stay in which, in addition to reiterating that the Debtor had not filed (and could not file) a confirmable plan, that the Debtor had failed to pay the Property's post-petition real estate taxes and had shown no proof of insurance – thereby, putting the Property at risk and not providing adequate protection for Elm. *See Debtor's Motion to Lift Stay, Dkt. No. 57.* In response, the Debtor did not deny that she had not paid the real estate taxes, but claimed to have insurance. In reply, once again Elm pointed out that in addition to all of the listed deficiencies on the Plan, the Debtor still failed to explain why she was paying only 2% to

unsecured creditors when her jointly held property was worth $180,000. *See Reply in Support of Motion to Lift Stay*, *Dkt. No. 62*. The Bankruptcy Court dismissed the case on May 14, 2012 and ruled that the motion for relief of stay moot. *See Dkt. Nos. 66, 68.*

## SUMMARY OF THE ARGUMENT

The Bankruptcy Court below ruled that once a real estate tax redemption period had expired prior to the filing of a bankruptcy case, a debtor cannot use the provisions of Chapter 13 to reinstate an expired redemption period to redeem sold real estate taxes. The Bankruptcy Court also ruled that the Debtor did not file this case or the various plans in bad faith. No court has evenly remotely approved the Debtor's argument that a plan can reinstate a tax redemption period which had expired prior to the case being filed. Furthermore, the Seventh Circuit's opinion in *In re Smith*, 614 F.3d 654 (7th Cir. 2010), reh'g denied (Aug. 25, 2010), did not change that decision – nor the reasoning behind it. In fact, the Seventh Circuit has been consistent that rights under redemption statutes does not mean rights to ignore State law and reinstate something already expired. As shown below, this Court can come to only one conclusion-that the Bankruptcy Court's decision that a debtor cannot use the provisions of Chapter 13 to reinstate an expired redemption period was proper must be affirmed.

However, the Court can also come to another conclusion – that the Bankruptcy Court's ruling denying Elm's assertion that Debtor filed this case and her plans in bad faith knowing that she had no real possibility of filing a confirmable plan and that she had no intention of complying with the Bankruptcy Code in both formulating a plan and in complying with it. As will be shown below, her denial was clearly erroneous as the Amended Plan and her actions before and during the case belie any good faith.

-11-

## ARGUMENT

**I.     THE BANKRUPTCY COURT WAS CORRECT IN DENYING CONFIRMATION AND DISMISSING THE CASE.**

The Bankruptcy Court below correctly refused approval of the Debtor's amended Chapter 13 plan which was based on an unheard of expansion of dicta found in a series of cases based upon that case entitled *In re Bates*, 270 B.R. 455 (Bankr. N.D. Ill. 2001). In *Bates*, the bankruptcy court characterized a tax certificate of purchase and the ramification of a Chapter 13 filing by the property owner as a two-step process. The first is its designation of the rights owned by the tax purchaser as a secured claim under 11 U.S.C. §101(5) and 11 U.S.C. §101(37). The second is the assertion that 11 U.S.C. §1322(b)(2)[3] can modify Illinois law and 11 U.S.C. §108(b) and permit the redemption of the real estate taxes over the life of the chapter 13 plan. *In re Bates*, 270 B.R. 455, 459-63 (Bankr. N.D. Ill. 2001). However, no case – even *Bates* – allowed the use of a Chapter 13 plan to renew a pre-case expired tax redemption right and allow that redemption to take place after the period was over and over the life of a plan. As set forth below, no debtor can use a Chapter 13 plan to extend the redemption date even if the case was filed pre-expiration – let alone after the redemption period had expired – and nothing in the case of *In re Smith*, has changed any of said rulings.

---

[3]Which states:

"(b) Subject to subsections (a) and (c) of this section, the plan may–

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims."

A. **Tax Sales.**

State court tax proceedings are generally *in rem* proceedings. Under Illinois law, taxes on real property constitute a lien. 35 ILCS 200/21–75. If the taxes are not paid, the county collector may sell the taxes to the highest bidder at a tax sale. 35 ILCS 200/21–190; *See A.P. Properties, Inc. v. Goshinsky,* 186 Ill.2d 524, 529–30, 239 Ill.Dec. 600, 714 N.E.2d 519 (1999) (delineating the tax purchase process). After the taxes are sold the county's lien is extinguished and the tax buyer is given a tax certificate which entitles him or her to payment of the purchase price of the taxes plus an interest penalty. *In re Milne,* 185 B.R. 280, 281 n. 1 (N.D.Ill.1995). If the property owner does not redeem those taxes within the statutorily allowed period, its interest in the property will be extinguished and the tax purchaser may obtain a tax deed on the property. 35 ILCS 200/22–40. *In re Davenport*, 268 B.R. 159, 165 (Bankr. N.D. Ill. 2001). That section states as follows:

> "(a) If the redemption period expires and the property has not been redeemed and all taxes and special assessments which became due and payable subsequent to the sale have been paid and all forfeitures and sales which occur subsequent to the sale have been redeemed and the notices required by law have been given and all advancements of public funds made under the police power made by a city, village or town under Section 22-35 have been paid and the petitioner has complied with all the provisions of law entitling him or her to a deed, the court shall so find and shall enter an order directing the county clerk on the production of the certificate of purchase and a certified copy of the order, to issue to the purchaser or his or her assignee a tax deed."

35 ILCS §200/22-40.

B. **11 U.S.C. §1322 Provisions.**

11 U.S.C. §1322 sets forth what a Chapter 13 plan can or cannot do. The relevant language to this case is as follows:

-13-

(b) Subject to subsections (a) and ©) of this section, the plan may–

      (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

      (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

©) Notwithstanding subsection (b)(2) and applicable nonbankruptcy law–

(1) a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence *is sold at a foreclosure sale* (emphasis added) that is conducted in accordance with applicable nonbankruptcy law.

Simply put, §1322(b)(2) first provides that a debtor cannot use a Chapter 13 plan to modify the rights of a secured creditor if the security for the debt is a lien on the debtor's primary residence.  This was enacted to provide incentive to lenders to lend debtor's funds for the purchase of their homes.  However, the Code then put in certain exceptions with the original main exception being that first mortgages can be modified to provide for the curing of any default within a reasonable time while the debtor maintains his/her regular payments if the last payment on the mortgage is due after the date on which the final payment under the plan is due.

**C.**      **Cases in this District Generally Refuse to Follow *Bates'* Rationale.**

Where there is a split in this Circuit amongst various Bankruptcy and District Court judges is in a case where the bankruptcy was filed *prior* to the expiration of the redemption period for the payment of real estate taxes and then the taxes were not redeemed by the redemption date, whether or not one can use the provisions of 11 U.S.C. §1322(b) of the

-14-

Bankruptcy Code to allow a debtor to make those payments over the life of the plan or whether one is limited to the provisions of 11 U.S.C. §108(b) which extends the redemption date to the later of the actual date of the redemption period expiring or 60 days after the filing of the case. Right on point for those cases which limit the right to use Chapter 13 plans is *In re Bequette* 184 B.R. 327 (S.D. Ill. 1995),[4] in which the Bankruptcy Court in a situation where a Chapter 13 filed after the tax sale but prior to the redemption date with no subsequent redemption before expiration of that redemption date ruled that:

> "upon expiration of the redemption period, the owner loses all interest in the property, including the right to redeem, and can do no nothing to prevent issuance of a deed to a tax purchaser (emphasis added). See *In re Jackson*, 176 B.R. 156, 159 (N.D. Ill. 1994); *Tabor Enterprises*, 65 B.R. at 46 (Bankr. N.D. Ohio 1986); *In re McKeever*, 32 B.R. 321, 326 (Bankr N.D. Ill 1994); *In re Rich*, 1994 WL 527161, at 3 (Bankr. N.D. Ill. 1994)."

*In re Bequette*, 184 B.R. 327 at 336 (S.D. Ill. 1995). Obviously included in the statement that the Debtor "can do nothing" is either using §1322(b)(2) as a tool to modify the rights of the holder of the certificate or the automatic stay provisions of 11 U.S.C. §362 to forestall a need to redeem within the proper time.

Nor is *Bequette* alone in disputing one or both of the *Bates* analysis. While a number of cases dispute the first part of the *Bates'* analysis (that the tax certificate purchaser has a "claim" under §101(5)),[5] most cases disagree with *Bates'* conclusion in dicta that 11 U.S.C. §1322(b)(2)

---

[4]A case ignored by *Bates*.

[5]For example, *In re Mary L. Blue*, 247 B.R. 748 (Bankr. N.D. Ill 2000) ("there is no scenario under which the tax purchaser could have a right to receive payment from the property owner....There is, therefore, no debtor/creditor relationship between the debtor and the tax purchaser."); *Hood v Hall*, 321 Ill.App. 3d 452, 254 Ill.Dec. 473, 747 N.E.2d 510, 513 (4th Dist. 2001) (no creditor relationship); *In re Jackson*, 176 B.R. 156 (N.D. Ill. 1994) (the interest of the tax purchaser is "more than a lien.......a certificate of purchase represents an executory interest in land....We conclude that the certificate of purchase held by [a holder of the certificate] represents

trumps the provisions of 11 U.S.C. §108(b). Instead, all such cases hold that where the case was filed prior to the expiration of the redemption period, the Debtor is bound by the 60 days set forth in §108(b) to redeem the unpaid real estate taxes. *In re Mary L. Blue*, 247 B.R. 748, 751 (Bankr. N.D. Ill 2000); *In re Murray,* 276 B.R. 869 (Bankr. N.D. Ill. 2002); *Smith v. Phoenix Bond & Indem.*, 288 B.R. 793 (N.D. Ill. 2002). Even *In re Davenport* 268 B.R. 159 (Bankr. N.D. Ill 2001), which agreed with *Bates* that there is a debtor/creditor relationship; nevertheless still held that "the stay does not toll the redemption period and the only other protection (emphasis added) for the Debtor under the Code is the right to extend the redemption period by 60 days under §108(b)." Thus, it went on to hold that since in that case the debtor failed to redeem within the requisite period, he "lost all interest in the property" (and need not seek relief from stay). *In re Davenport* 268 B.R. 159, 165-66 (Bankr. N.D. Ill 2001). Further, *In re Stewart*, 190 B.R. 846, 851 (Bankr. C.D. Ill., 1996) not only found that any redemption must be within the 60 days mandated by §108(b), it also declared that a Chapter 13 plan can never be used to pay a redemption in installments citing *In re Tynan*, 773 F.2d 177 (7th Cir. 1985) as support.

This same question was presented in both *In re Murray,* 276 B.R. 869 (Bankr. N.D. Ill. 2002) and in *Smith v. Phoenix Bond & Indem.*, 288 B.R. 793 (N.D. Ill. 2002). In refusing to follow *Bates*, *Murray* also relied on *Tynan* and held that the same rationale behind this Court's ruling in *Tynan* (although that case discussed the use of a Chapter 13 plan to redeem a

---

a future interest in the property itself."); *In re McKeever*, 132 B.R. 996 (Bankr N.D. Ill. 1991) ("if an application for tax deed is timely filed, equitable title to the property passes to the tax sale purchaser."). See, however, *In re Commings,* 297 B.R. 701 (Bankruptcy N.D. Ill 2003) (tax purchaser has a "claim") and *In re Davenport* 268 B.R. 159 (Bankr. N.D. Ill 2001) (debtor/creditor relationship exists) for cases to the contrary.

mortgage), mandated that §108(b) controls over §1322(b)(2) and restricts the redemption period

to that under §108(b), was also applicable to real estate tax redemptions. *Smith* agreed and went

even further:

> "*Murray* disagrees with the *dicta* in Bates, holding that a debtor who had filed for
> bankruptcy before the expiration of a delinquent tax redemption period could not modify
> a plan after the time limit set in §108(b) expired (*Murray*, 276 B.R. pp. 875-76). The
> court reasoned that allowing the modification rights afforded in §1322(b)(2) to be
> invoked after the expiration of the redemption period of §108(b) would render the latter
> provision superfluous. *Id.* The *Murray* court's reasoning is persuasive. Imposing
> §§108(b) does not render the provisions in §1322 insignificant, it only limits the time
> period in which they can be applied. On the other hand, the *Bates* analysis renders
> §108(b), and the additional 60 days provided by Congress, superfluous. Judge Ginsburg's
> opinion, following *Murray* and interpreting *Tynan*, correctly applies §108(b) to the facts
> of this case."

*Smith v. Phoenix Bond & Indem.*, 288 B.R. at 797 (N.D. Ill. 2002). Since §108(b) has no

meaning in Chapter 13 under the *Bates*' interpretation, but does so if §1322(b) has no

application, *Phoenix Bond* came to the only conclusion possible under the rules of statutory

construction-that §108(b) limits the time a debtor can redeem the taxes.

This rationale is supported by the very language of §108(b). That section states that:

> "(b) Except as provided in subsection (a) of this section, if applicable law an order
> entered in a proceeding, or an agreement fixes a period within which the debtor or an
> individual protected under section 1301 of this title may file any pleading, demand,
> notice, or proof of claim or loss, cure a default, or perform any other similar act, and such
> period has not expired before the date of the filing of the petition, the trustee may file,
> cure, or perform, as the case may be, before the later of—(1) the end of such period,
> including any suspension of such period occurring on or after the commencement of the
> case; or (2) 60 days after the order for relief."

According to the *Bates*, there should have been another subsection "or (3) the period set

forth in a plan under section 1322(b)(2) of this title." The failure of the Code to set forth that

additional alternative shows that Congress' intent was to limit that extension to the clear and

unambiguous language of the section-namely, the 60 days. Yet, *Bates* has never articulated why

that clear interpretation is wrong.

*Stewart*, *Murray* and *Smith* all lean heavily on the Seventh Circuit's opinion in *Tynan*. In *Tynan*, this Court specifically analyzed the issue as what was the applicability of §108(b) to "statutory redemption rights" (*Tynan*, at 179) and found that when a petition is filed before the "applicable state redemption period, §108(b) extends the redemption date for 60 days from the commencement of the proceeding." *Tynan*, at 179. As to tolling the running of the redemption period until the plan was completed, this Court correctly asserted that to do so would "cloud every title secured through a foreclosure sale due to the possible filing of a voluntary petition [ ] during the statutory redemption period" and that "§108(b) is the only extension of time available to debtor." *Tynan*, at 179-80. The ability of a property owner to redeem unpaid and sold real estate taxes is a "statutory redemption right." As *Murray* and *Phoenix Bond* both agree, under *Tynan,* §108(b) is the only extension of time available where the case was filed pre-expiration of the redemption period.

It goes without saying that according to these cases, a case filed *after* the redemption period had expired cannot use a Chapter 13 plan to pay the taxes as there is nothing left for the Debtor to pay.

**D.    Even the Minority Cases Refuse to Allow the Use of a Chapter 13 Plan When the Case Was Filed after the Expiration of the Chapter 13 Plan.**

On the other hand, there are a number of cases that follow the rationale set forth by Judge Wedoff in *In re Bates*, 270 B.R. 455 (Bankr. N.D. Ill. 2001). See also *In re Commings,* 297 B.R. 701 (Bankruptcy N.D. Ill 2003) (tax purchaser has a "claim") and *In re Davenport* 268 B.R. 159 (Bankr. N.D. Ill 2001) (debtor/creditor relationship exists) for cases to the contrary.

*Bates* itself explained the rationale of its decision (*Id.,* at 467):

> "The concept of "claim,"defined by 101(5) of the Bankruptcy Code, is central to the operation of the Code........Accordingly, the initial question in determining the impact of bankruptcy on Illinois property tax sales is whether, after a tax sale, a claim exists for purposes of bankruptcy.

*Bates*, at 461-62. After defining what "claim" does exist as a result of tax sales ("In sum, the situation after a tax sale is one in which, for purposes of bankruptcy, the landowner owes two distinct claims on account of the delinquent property taxes: (1) to the tax purchaser, in the redemption amount, and (2) to the county, contingent on the tax purchaser's election to have a sale in error declared, in the amount of the unpaid taxes.").[6] *Bates* explains why no "claim exists' if the filing is post-expiration of the redemption date:

> "A Chapter 13 debtor, by virtue of the rights granted under the Bankruptcy Code, does not lose the rights that exist under state law. If a Chapter 13 debtor with property subject to an Illinois tax sale *still had the right to redeem by a lump-sum payment at the time of the filing of the case, that right would remain after bankruptcy* (emphasis added), and would be subject to the 60–day extension of 108(b). ........Claims in bankruptcy are assessed as of the date the bankruptcy case is filed. *See* 11 U.S.C. § 502(b) (requiring a court, in the event of an objection to a claim, to "determine the amount of such claim ... as of the date of the filing of the petition."). As long as the redemption period has not expired prior to the bankruptcy filing, there is a claim that can be treated during the bankruptcy case— through sale of the collateral in Chapter 7 or plan treatment in Chapter 13— even though the redemption period expires during the pendency of the case."

*In re Bates*, 270 B.R. 455, 466-67 (Bankr. N.D. Ill. 2001). In other words, if the case was filed before the redemption period had expired, then there existed a "claim" on the date of the filing since there could be a redemption and forced use of the property for such redemption and/or extinguishment of the contingent tax purchaser claim. But if the redemption period had expired before filing so that there was no claim, the Code does not reinvent or reinstate something no longer in existence under state law; i.e. a right to redeem.

---

[6]*Bates*, at 465.

This latter situation is the case here. The Debtor filed after the redemption period expired and wants to still be able to pay the tax using a Chapter 13 plan under §1322(b)(2). *Bates* clearly says one cannot do so.

This finding that the case must be filed prior to the expiration of the redemption date has been followed repeatedly – even by cases which support the *Bates* concept. *In re Butler*, 171 B.R. 321, 326 (Bankr. N.D. Ill. 1994) ("However, after expiration of the redemption period, Butler could not dispose of her property. After that point, neither she nor anyone to whom she might sell the property could prevent issuance of the tax deed to Lejcar.......The expiration of the redemption period still extinguished all of Butler's equitable interest in the property. Assuming that state law procedures were followed thereafter, her legal title interest in the property was also extinguished when the deed issued. Further, upon perfection by recording, the effective date of the deed related back to the expiration of the redemption period."); *In re Kasco*, 378 B.R. 207, 214 (Bankr. N.D. Ill. 2007) ("As Judge Wedoff stated in *Bates,* '[a]s long as the redemption period has not expired prior to the bankruptcy filing, there is a claim that can be treated during the bankruptcy case ... [through] plan treatment in Chapter 13—even though the redemption period expires during the pendency of the case."). All acknowledge this fact because there is no claim to be adjusted.

Thus, not only is there no conflict, the cases are unanimous that one cannot do so.

**D.** *Smith* **Did Not Change the Analysis.**

As this Court is aware, the Seventh Circuit, in a case entitled *In re Smith*, 614 F.3d 654 (7th Cir. 2010), reh'g denied (Aug. 25, 2010) ruled on the issue of when the statute of limitations begin to run under 11 U.S.C. §548. §548 is that section in the Bankruptcy Code that deals with

fraudulent conveyances – either actual fraud or conveyances deemed as "constructive fraud." *Smith* found, that as the relevant inquiry under the language of §548 was when the transfer was "perfected" and ruled that the perfection only took place when the tax deed issued was recorded. However, that case only dealt with the requirements of §548 and did not either discuss or overrule the previous law that if the redemption period had already expired prior to the case being filed that one can use §1322 to pay unpaid real estate taxes. Thus, whatever its ruling regarding §548, it has no relevance to the current discussion.

The Bankruptcy Court specifically ruled when it both denied confirmation and dismissed the case that *Smith* has no relevance to the matter as it dealt with some other issue entirely. It was correct.

This Court has intimated that as a result of Smith's statement of the strong property rights which is still imbued in the owner of the Property even after the redemption date has expired somehow expands the definition of "claim." While the definition of the term "claim" is expansive, it does not invent rights that do not exist at the time of the filing of the case.

11 U.S.C. §101(5) contains the definition of the term "claim":

(5)     The term "claim" means–

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

Notwithstanding a property owner's possessory rights or right to make the tax buyer

-21-

prove up his right to a deed, there is one right he does not have: the right to force the tax buyer to give up his lien or other rights in the property in return for payment. Thus, at the time of filing of the case, the tax buyer has been enforceable, inalienable right and there exists no corresponding vitiating right in the debtor. Thus, there is no claim to be modified or paid by the debtor. And without a "claim,: §1322(b) is inapplicable to allow the use of a plan to modify the tax buyer's unassailable rights to a deed.

This issue was similarly addressed in *in re Tynan*, 773 F.2d 177 (7th Cir. 1985) when mortgage foreclosure sales took place in Illinois prior to the expiration of the redemption period. That case also dealt with statutory redemption rights and the issue was whether the Bankruptcy Code (there the 60 day extension section of §108(b)) could modify those statutory rights. There, as every case which dealt with the issue in this case, found that for the Code Section to be applicable and extend the redemption rights, the filing had to take place prior to the expiration of the redemption rights:

> We find the reasoning of these cases persuasive and hold that when a petition in bankruptcy is filed before the expiration of the applicable state redemption period, § 108(b) extends the redemption period for 60 days from the commencement of bankruptcy proceedings."

*Tynan*, at 179. The Court cannot ignore the plain meaning of the statute merely to gerrymander a result. And, frankly, there is no philosophical distinction between a mortgage redemption date and a tax redemption date. Just like in the mortgage foreclosure process of *Tynan*, the owner could not extend the redemption rights although he too has possessory rights and could force the mortgagee to prove his right to foreclose, so too the property owner's similar rights do not recreate, let alone, extend the redemption dates for tax sales.

Furthermore, the same dire cloud and disastrous effect listed in *Tynan* would exist even

more so in tax sales. If the Debtor's theories are correct, then tax buyers could almost never obtain a tax deed and property owners would have no incentive to redeem on a timely basis. Since the tax buyer must get his order for deed no later than three years from the date of sale (22 ILCS §200/21-350; §21-380), and if the redemption period can come and go without consequence then why should any tax buyer redeem until the day before the Tax Deed is recorded – a period way beyond the three year period mandated under Illinois law. Such a result would be disastrous for all counties in the State as it would drive away all tax buyers. Moreover, it would almost force tax buyers to immediately seek a sale in error since there would be no time limit to redemptions while there would be a time limit under Illinois law for a sale in error (five years). Less tax buyers means less competition and higher penalty rates to property owners. less tax buyers and less revenue flows to each county.

Such a wholesale vitiation of government tax collecting merely because the debtor files for bankruptcy is not the intention of the Code or these provisions.

### F. *Butner* Demands a Clear Expression of Congressional Intent Before State Law Can Be Changed.

Another problem about the *Bates* decision is its refusal to comply with Supreme Court precedent as articulated by the seminal case of *Butner v United States,* 440 U.S. 49, 99 S. Ct. 914 (1979). That case dealt with the issue of statutory construction when bankruptcy law conflicted with state law and the bankruptcy law failed to show a clear Congressional intent to override the state law. In *Butner*, the Supreme Court stated:

> "Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently because an interested party is involved in a bankruptcy proceeding."

*Butner* at 55, 918. This requirement that federal courts respect state created interests unless a

-23-

different result has been ordered by Congress was then repeated in *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 114 S.Ct. 1757, *reh'g denied*, 512 U.S. 1247, 114 S.Ct. 2771 (1994). There, in an analogous situation as in the instant case, the Supreme Court in a bankruptcy case discussing "reasonably equivalent value" of a foreclosure sale stated:

> "It is beyond question that an essential state interest is at issue here: We have said that the "general welfare of society is involved in the security of titles to real estate" and the power to insure that security "inheres in the very nature of state government." [Citation omitted]. Nor is there any doubt that the interpretation urged by petitioner would have a profound effect upon that interest: The title of every piece of realty purchased at foreclosure would be under a federally created cloud...To displace traditional state regulation in such a manner, the federally statutory purpose must be "clear and manifest." [Citation omitted]."[7]

Whether as stated in *Jackson* that the purchaser of a certificate gets a legally protected equitable property interest in the real estate or whether he has a "lien," under the rule of law expounded by both *Butner* and *BFP*, the federal courts must refrain from altering that interest without "clear and manifest" Congressional direction. *Butner* says that Congress must specifically intend to change state law and show a federal interest in doing so. Where it does not do so, state law remains intact. Thus, the Supreme Court has specifically stated that such an attempt to bootstrap new revisions without a clear attempt and bypass state law is improper (and a valid ground to deny confirmation since the property no longer belongs to the debtor). A review of the "clear and manifest" intent of Congress as stated in the clear and unambiguous language of §108(b) seems obvious that an extension of no more than 60 days is mandated-not the oblique analysis set forth in *Bates*. That is the most natural reading of the interplay of the

---

[7]*BFP v. Resolution Trust Corp.,* 511 U.S. 531 at 544, 114 S.Ct. 1757, 1764-65, *reh'g denied*, 512 U.S. 1247, 114 S.Ct. 2771 (1994).

sections and its most consistent to its legislative purpose.[8]  In fact, as stated in the cases cited above, it is clear to most courts that this was the intent and effect of the Congress' enactment of §108(b).

Moreover, as mentioned above and as in *BFP* and similarly articulated by *Smith*, *Bates* would put all tax sales under a federally created cloud-maybe the property owner would file a Chapter 13 bankruptcy, wait until after the redemption date, and then file a plan.  There is no valid rationale to allow that to happen without the express intent of Congress and that is clearly missing here.

**G.    §1322©(1) Has No Applicability to the Issues of this Appeal.**

In an argument first presented to this Court, the Debtor claims that as long as legal or equitable title had not been transferred and recorded, a debtor can use the provisions of 11 U.S.C. §1322©(1)[9] to cure the default. That section was added to the Bankruptcy Code in 1994, as an additional another exception: "a default with respect to, or that gave rise to, a lien on the debtor's principal residence may be cured ... *until such residence is sold at a foreclosure sale* (emphasis added) that is conducted in accordance with applicable nonbankruptcy law." 11 U.S.C.  1322(c)(1).  Obviously, the unambiguous language of this subsection deals *only* with

---

[8]See *In re Danaskos*, 254 B.R. 416, 421 (Bankr. N.D. Ill. 2000) on a similar issue and §1322(c).

[9]11 U.S.C. §1322(c) states as follows:

©) Notwithstanding subsection (b)(2) and applicable non-bankruptcy law–

(1) a default with respect to, or that give rise to, a lien on the debtor's principal residence may be cured under paragraph (3) or (5) of subsection (b) until such residence is sold at a foreclosure sale that may be conducted in accordance with applicable non-bankruptcy law;

mortgage foreclosures ("until such residence is sold at a foreclosure sale') and, not as the Debtor falsely claims "as long as the home has not been sold."[10]  In addition to that argument being improperly introduced for the first time on appeal in this Court, the Debtor blithely ignores the fact that all courts which have considered such argument-which list now includes this Court-have found it to be baseless.

Even had the issue been properly presented below, and it was not as more fully described below, Debtor's §1322©) argument has no basis and has been found without merit.  In fact, in addition to the opinion below, each court which has addressed the issue, has rejected the argument out of hand.  In *Smith v. Phoenix Bond & Indem.*, 288 B.R. 793 (N.D. Ill. 2002), in the opinion cited above, this Court stated the following in finding the argument unpersuasive:

> "The *Murray* court's reasoning is persuasive.  Imposing §108(b) does not render the provisions in §1322 insignificant, it only limits the time period in which they can be applied. On the other hand, the *Bates* analysis renders §108(b), and the additional 60 days provided by Congress, superfluous. Judge Ginsburg's opinion, following *Murray* and interpreting *Tynan*, correctly applies §108(b) to the facts of this case."

*Smith v. Phoenix Bond & Indem.*, 288 B.R. at 797 (N.D. Ill. 2002).

Even more telling is the bankruptcy court opinion in the *In re Smith* case, which denigrates the entire argument as implausible and against the plain unambiguous language of the statute-language that is applicable to the argument presented here:

> "The Debtor cites no authority finding that §1322(c)(1) applies to a payment in redemption of a tax sale.  To fit within the language of §1322(c)(1), the Debtor analogizes between a payment in redemption of property taxes and the cure of a

---

[10]Elm suggests that the false paraphrase of the statute could not have been inadvertent since the Debtor goes out of her way to merely say "sold" and not mention foreclosures – not that such paraphrase helps since whatever sale occurs in the real estate tax procedures, that takes place when the taxes are sold at a tax sale.  When the redemption period expires, and, if the tax buyer has complied with his obligation under the Property Act, the County treasurer issues the tax buyer a deed.

mortgage default......Since §1322(c)(1) refers to a default 'that gave rise to a lien,' the debtor reasons that the non-payment of property taxes would constitute a 'default' and that the proposed redemption of property taxes therefore falls within the scope of §1322(c)(1)."

"[Unlike a mortgage foreclosure sale] a tax sale does not, however, terminate a property owner's rights in the same way as does a mortgage foreclosure sale. After a tax sale, a delinquent owner retains both legal and equitable title to its property. (Citations omitted). Until the redemption period expires, the owner can sell the property to a third party who can then redeem the property. (Citation omitted.) There is a two-and-one-half year period during which an owner can redeem the residential property from a tax sale by depositing with the county clerk the amount paid by the tax purchaser, plus the interest, penalties, and other costs specified in the Property Tax Code. (Citation omitted.) Because of the significant differences in the rights of the property owner in the interval between the judicial sale and the confirmation of the sale, the Court declines to find a comparison between the rights of the parties to a proceeding for a tax deed and those of the debtors and mortgagees in the decisions under the IMFL that the parties have cited."

*In re Smith*, Bankruptcy Case No. 02-22481, pp.4-9.

If anything, the opinion is made more relevant by this Court's decision in *Colon v Option One Mortgage*, 319 F.3d 912 (7th Cir. 2003), wherein this Court has declared that a foreclosure sale terminates a debtor's interest in real property. Now, the debtor retains nothing after a foreclosure-unlike a tax sale.

In reality, the opposite of the Debtor's argument is true. It is Dabal whose argument lacks analysis. Dabal makes no attempt to explain why the *In re Smith* bankruptcy court's analysis is incorrect. As *Smith* stated, "§1322(c)(1) sets a time limit for the exercise of a debtor's right to cure *mortgage* defaults (emphasis added)." *In re Smith*, p. 4 Moreover, not explained and not directly decided by the *In re Smith* bankruptcy court is how a non-payment of property taxes constitutes a "default." §1322(c)(1) requires there be a "a default with respect to, or gave rise to, a lien," and nothing in either the Illinois Property Tax Code 35 ILCS §200/22-10 through 22-30 ("IPT"), or any other authority defines that non-payment as a "default." The clear

unambiguous meaning of the term "default" relates to a failure to comply with an obligation under a contract-not an obligation under law.

Moreover, even without the *in re Smith*'s definition, the unambiguous language in §1322(c) shows the argument to have no basis. §1322(c)(1) says "a default...may be cured.... until such residence is sold at a foreclosure sale" clearly illustrates that the clause applies only to a mortgage default since the term "foreclosure sale" has no applicability to tax sales. In addition, it is clear that "absent a persuasive reason to the contrary, the court is to attribute to the words of a statute their common meaning." *In re Clark*, 738 F.2d 869 (7th Cir., 1984). The plain meaning of the provision is that non-payment of real estate taxes do not result in foreclosure sales. The Illinois Mortgage Foreclosure Law, 735 ILCS 5/15-1501, *et seq.*, does not control tax sales- the IPT does. Thus, it is clear that no such connection can be made between §1322(c)(1) and the redemption of property taxes.

## H.     Argument Was Improper Both Below and in this Court.

It is well established that issues not raised in the Bankruptcy Court ordinarily cannot be presented to the District Court on appeal. See *Graham v. Lennington*, 74 B.R. 963, 966 (S.D. Ind. 1987); *Johnson v. Fairco Corp.*, 61 B.R. 317, 320 (N.D. Ill. 1986):

> "Issues that are not raised by a party in the bankruptcy court are ordinarily waived and cannot be addressed by the district court on appeal, unless the issue itself is presented by the record. *See*, e.g., *In re Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1379 (9th Cir. 1985)."

*See* also *In re Facility Systems, Inc.*, 101 B.R. 519 (N.D. Ill. 1989)**;** *In re Chambers*, 140 B.R. 233 (N.D. Ill. 1992), *In re TAK Broadcasting Corp.*, 137 B.R. 728, 731, 1992 U.S. Dist. LEXIS 3459, Bankr. L. Rep. (CCH) P74503 (W.D. Wis. 1992);  *In re Ratner*, 132 B.R. 728 (N.D. Ill. 1991).

While certain courts have held that an issue may properly be raised for the first time on appeal from the bankruptcy court when it presents a purely legal question and refusal to consider it would result in a miscarriage of justice *(See In re Louisiana Industrial Coatings, Inc.,* 53 B.R. 464, 469 [D.La. 1985], *citing In re Johnson,* 724 F.2d 1138, 1140 [5th Cir. 1984]), such is not the case here. In this case, not only is it a fact related issue, there can be no miscarriage to ignore an argument no court has supported. And while courts have similarly held that an appellant may raise an issue on appeal despite its failure to do so in the Bankruptcy Court if the issue is presented by the record itself (*See In re Pizza of Hawaii, Inc.,* 761 F.2d 1374, 1379 [9th Cir. 1985]; *In re Monetary Group,* 91 B.R. 138, 140 [M.D. Fla. 1988]; *Johnson v. Fairco Corp., supra,* 61 B.R. at 320), nothing in the record presents itself with whether issues as whether tax sale statutes of the State of Illinois (the Property Tax Code) are foreclosure statutes or how the language of §1322©) can be considered as relating to a tax sale redemption, appear in the record. The only matters in the record are the Chapter 13 plan and the pleadings regarding the motions in question. That is not sufficient to make the arguments presented in the District Court for the first time or repeated here.

## II. ORIGINAL AND AMENDED PLANS WERE NEVER CONFIRMABLE.

As shown below, the original Chapter 13 plan filed by the Debtor and her subsequent amended plan were never confirmable for the reasons set forth below. As a result, the bankruptcy Court properly denied confirmation and dismissed the case.

### A. Plan Improperly Failed to Pay Creditors the Liquidated Value of Estate.

The Bankruptcy Code requires a debtor to commit all of his disposable income to repayment of his creditors over the term of his Chapter 13 plan. "If this process, honestly and

fairly undertaken, produces a payment that is a small percentage of the debt, the Code permits such a payment so long as it is "not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7." 11 U.S.C. 1325(a)(4)." *In re Smith*, 286 F.3d 461, 468 (7th Cir. 2002). Here the Debtor made no attempt to do so.

A joint tenancy is " 'a present estate in all the joint tenants, each being seized of the whole.' " *Harms,* 105 Ill.2d at 224, 85 Ill.Dec. 331, 473 N.E.2d 930, quoting *Partridge v. Berliner,* 325 Ill. 253, 257, 156 N.E. 352 (1927). An inherent feature in the estate of joint tenancy is the right of survivorship, which is the right of the last survivor to take the whole of the estate. *Harms,* 105 Ill.2d at 224, 85 Ill.Dec. 331, 473 N.E.2d 930. The creation and the perpetuation of the joint tenancy are dependent on four unities: interest, title, time, and possession. *Harms,* 105 Ill.2d at 220, 85 Ill.Dec. 331, 473 N.E.2d 930. The voluntary or involuntary destruction of any of the unities by one of the joint tenants will sever the joint tenancy. *Harms,* 105 Ill.2d at 220, 85 Ill.Dec. 331, 473 N.E.2d 930; *Maniez v. Citibank, F.S.B.*, 404 Ill. App. 3d 941, 953, 937 N.E.2d 237, 248 (2010). In addition, as stated above, state court tax proceedings are generally *in rem* proceedings. Under Illinois law, taxes on real property constitute a lien. 35 ILCS 200/21–75.

Furthermore, 11 U.S.C. §363(h) provides in pertinent part, '... the trustee may sell both the estate's interest ... and the interest of any co-owner in property which the debtor had, immediately before the commencement of the case, an undivided interest as a ... joint tenant.... if partition in kind of such property among the estate and such co-owners is impracticable; the sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners; and the benefit to the estate of

-30-

a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such

co-owners. All of those elements are met in this case. The best value for the Estate would be to

sell the entire parcel rather than a one-sixth (or seventh) interest; partition is impracticable,[11] and

the sale would realize money to all rather than a loss to all tenants for a failure to pay real estate

taxes.

In the instant case, the Property is held in joint tenancy by the Debtor and her six other

siblings in joint tenancy. Since the real estate taxes are a lien on each and every joint tenant

interest in the Property, then each interest is liable for their pro rata share of the unpaid taxes in

the amount, up to and including the value of their interest in the Property.[12] Since the Debtor

acknowledged that at the time of the filing, the Property was worth at least $180,000 (with each

having at least an interest of $30,000 in the Property), and that the tax due is at the time of filing

to be approximately $41,000, then each tenant would owe approximately $14,000 of said tax

debt. As a debtor has all powers of a trustee, and even taking Debtor's claim of a right to use a

plan would be viable (and Elm does not), the debtor should have proposed a plan whereby, at the

minimum, the Property would be sold under the rights set forth in §'363(h), the taxes paid in full

(with interest) and the balance split pro-rata. Had such a sale taken place, then instead of the

measly $1,245 to be paid to unsecured creditors under the Amended Plan, the Debtor would have

had approximately $16,000 (less the pro rata costs of sale)to distribute to unsecured creditors

including the Department of Education on its non-dischargeable student loans. Based on that

---

[11]Where property is a single family residence, there is no practicable manner of partition other than a sale and division of the proceeds. *In re Gauthreaux,* 206 B.R. 502, 505 (Bankr. N.D. Ill. 1997).

[12]For example, if any of the joint tenants would pay the entire debt out of his/her interest, the others would have a duty of contribution equal to their pro-rata share.

calculation, it was required that the Debtor make monthly plan payments of approximately $1,210 ($16,000 divided by 60 equals $320 extra each month). Therefore, Debtor's Amended Plan is grossly deficient and fails to comply with §1125(a)(4).

Elm repeatedly pointed out to the Bankruptcy Court about the limited and minimal payout to the unsecured creditors. See Elm Motion to Dismiss, Dkt. 7., *Transcript of hearing on Debtor Motion to Extend*. The Bankruptcy Court ultimately dismissed the case and denied confirmation on other grounds, but could have dismissed on this ground alone. Since that issue is obvious from the record, this Court can affirm the judgment on this ground alone.

**B.      The Debtor Failed to Use All Available Income to Fund the Plan.**

In addition to the other plan requirements, 11 U.S.C. §1322(a)(1) provides that the plan shall provide for the submission of <u>all</u> or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan. The Debtor did not do so. As Debtor has admitted, although her Schedule J provided that the Debtor would pay the ongoing real estate taxes on the Property, she has failed to pay those ongoing real estate taxes both before and after this case was filed. It appears that no insurance on the Property was obtained prior to the appeal being filed although, again, the Debtor claimed she was so paying. Since it is obvious that the Debtor never planned to pay either the Property's real estate taxes or insurance for the Property – since she did not do so both in this case and/or in the Prior Case – the income that should have been included in the Plan was not included because of the intentionally false Amended Schedule J that promised those payments. Even ignoring the fact that the stated monthly real estate tax payment was insufficient to pay the actual real estate tax installments, the Debtor under-reported the net cash available for the plan by deducting

-32-

approximately $490 in monthly expenses she had no plans to pay and did not pay. That alone

warranted dismissal and a finding of bad faith.

### III. THE BANKRUPTCY COURT ERRED IN DENYING ELM'S MOTION TO DISMISS AND NOT FINDING THAT THE DEBTOR ACTED IN BAD FAITH.

### A. Good Faith Requirement.

While Chapter 13 does not explicitly contain a good faith requirement for filing, under 11

U.S.C. §1307©), a party in interest or the United States Trustee may request that the court

dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, *for*

*cause* (emphasis added). The Seventh Circuit has ruled that a lack of good faith is sufficient case

for dismissal. *In re Smith*, 848 F. 3d 813, 816, n. 3 (7th Cir. 1988).

The obligation of good faith is imposed on the debtor at two stages of a Chapter 13

proceeding. First, the debtor must file his petition for Chapter 13 bankruptcy in good faith. *See*

*In re Love,* 957 F.2d 1350,1354-55. Second, the debtor must file his Chapter 13 plan in good

faith. *See id.; In re Schaitz,* 913 F.2d 452, 453 (7th Cir.1990); *see also* 8 Lawrence P. King et al.,

Collier on Bankruptcy, at 1325-13 (15th ed.2001). *In re Smith*,[13] 286 F.3d 461, 465 (7th Cir.

2002).

As stated by the Seventh Circuit in *Smith*, (*Id.* at 466): "The provisions of 11 U.S.C.

1325 ensure that a Chapter 13 plan ... will be properly scrutinized by the bankruptcy court before

the plan is confirmed, mitigating the danger of abuse." *In re Young,* 237 F.3d 1168, 1174 (10th

Cir.2001). In considering whether a plan is filed in good faith, the court asks of the debtor: "Is he

really trying to pay the creditors to the reasonable limit of his ability or is he trying to thwart

them?" *In re Schaitz,* 913 F.2d at 453. "At base, this inquiry often comes down to a question of

---

[13]Also not the *in re Smith* argued by the Debtor.

-33-

whether the filing is fundamentally unfair." *In re Love,* 957 F.2d at 1357."

Generally, a court must consider the totality of circumstances surrounding a variety of objective and subjective factors, *see, e.g., In re Stump,* 280 B.R. 208, 214 n. 2 (Bankr.S.D.Ohio 2002); and then determine whether, in light of the spirit of the Bankruptcy Code, the filing is fundamentally fair to creditors attempting to exercise their collection rights. *Matter of Love,* 957 F.2d 1350, 1355, 1357, 1359 (7th Cir.1992)("the focus of the good faith inquiry under both Section 1307 and Section 1325 is often whether the filing is fundamentally fair to creditors and, more generally, is the filing fundamentally fair in a manner that complies with the spirit of the Bankruptcy Code's provisions"); *In re Leavitt,* 209 B.R. 935, 939–41 (9th Cir. BAP 1997), *affirmed,* 171 F.3d 1219 (9th Cir.1999); *In re Liptak*, 304 B.R. 820, 828 (Bankr. N.D. Ill. 2004).

A non-exhaustive list of seven factors to be considered in applying the totality of the circumstances test. *Love* t 857. These factors are: (1) the nature of the debt, including the question of whether the debt would be non-dischargeable in a Chapter 7 proceeding; (2) the timing of the petition; (3) how the debt arose; (4) the debtor's motive in filing the petition; (5) how the debtor's actions affected the creditors; (6) the debtor's treatment of creditors both before and after the petition was filed; and (7) whether the debtor has been forthcoming with the court and creditors. *Id.* The focus of the good faith inquiry hinges on whether the filing is fundamentally fair to creditors and complies with the spirit of the bankruptcy code. *Id. Babcock v. Veco Corp.*, 99 C 5385, 1999 WL 1212556 (N.D. Ill. Dec. 15, 1999).

The most typical scenario for individuals who file (primarily Chapter 7 and 13) bankruptcy cases without good faith by failing to file accurate (or any) schedules and statements of affairs, not appearing at the meeting of creditors or scheduled court hearings, not sending in plan payments, proposing multiple unconfirmable payment plans, concealing assets, and/or filing

multiple serial cases after dismissal. *In re McNichols,* 258 B.R. 892, 902 (Bankr.N.D.Ill.2001); *In re N.R. Guaranteed Retirement,* 112 B.R. 263, 276–77 (Bankr.N.D.Ill.1990) (citing *In re Metz,* 820 F.2d 1495, 1497 (9th Cir.1987)); *e.g., Matter of Love,* 957 F.2d 1350, 1352–53, 1357–59 (7th Cir.1992); *In re Liptak*, 304 B.R. 820, 829 (Bankr. N.D. Ill. 2004).

In addition to the above, the Code requires a debtor to commit all of his disposable income to repayment of his creditors over the term of his Chapter 13 plan. "If this process, honestly and fairly undertaken, produces a payment that is a small percentage of the debt, the Code permits such a payment so long as it is 'not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7.' 11 U.S.C. 1325(a)(4)." *Smith*, *Id.* at 468.

## B. Debtor's Conduct Meets Most of the Elements for Finding Bad Faith.

This entire case as well as the Debtor's actions prior to filing screams bad faith. On the eve of a court hearing whereby Elm would obtain a tax deed, the Debtor filed a bankruptcy case after which she did nothing. Over many months she did not even pay the full filing fee and made only one diminimus plan payment. The promised income from her children never materialized. She ignored all court proceedings. She filed inaccurate and clearly false Schedules in which the Debtor claimed to have no debt to the Cook County Treasurer although real estate taxes continued to accrue and not be paid; failed to include possible claims against her siblings; falsely listed the number of people living and eating in her house; may have even failed to include the salary earned by her "dependent" daughter; failed to have the Property insured, failed to pay the ongoing real estate taxes and forced others to do so, and proposed a plan that was legally deficient as a matter of Illinois law and under the Bankruptcy Code.

Then when the case was dismissed and another deadline for the issuance of a tax deed

arose, she acted the same way with the same negative consequences.  She again filed false and

deficient Schedules with false identification of the number of residents in her home and false and

understated expenses – some of which expenses that are deducted from the income of a plan but

never paid.  She then asserted non-existent exemptions to hide assets.[14]  The Debtor once again,

filed a case while failing to keep the Property insured and/or to pay ongoing real estate taxes

(although Debtors' pleadings falsely claimed that her son would do so directly and the original

plan made no such provision).  The Debtor continued to manipulate the Schedules to increase or

decrease the value of the Property when expedient to do so (after increasing the value of the

property from her previous schedules filed months before, she decreased its value by a third just

a couple weeks later when she thought it advantageous to do so) and consistently failed to

include possible claims against her co-tenants.  The Debtor continued her repeated proposal of

legally deficient Chapter 13 plans where no complete or meaningful payment to creditors is

proposed.  The Debtor did not even make an effort to complete her Schedules by including all

creditors with their updated and correct debt amounts.  Instead, she merely copied what was used

before with no investigation or thought or attempt at completion or accuracy although

completeness and accuracy is paramount when discussing the efficacy of proposed Chapter 13

plans – instead, professing to wait for proofs of claim to be filed.  All of the above illustrates all

too well the Debtor's lack of forthrightness to the Court and creditors.  That alone and vitiates

any good faith claim and demands dismissal.

Furthermore, as stated in *Love*, both Debtor's conduct and various proposed plans show a

lack of fairness to, and even distinct disdain for, her creditors.  Her lack of fairness to Elm is

---

[14]Under Illinois law, no homestead exemption can be claimed in a real estate tax sale.
735 ILCS §5/12-903; *Douthett v Winter*, 108 Ill. 330 (Ill. 1884).

clearly evident.  She has spent the last year doing everything possible to merely forestall the

issuance of a tax deed while at the same time making no effort to protect the Property she claims

to hold so dear with even any insurance coverage or even paying its real estate taxes so that

future tax sales are avoided.  Instead, these intentional omissions put both the Property and

Elm's lien interests at risk.  It forced Elm to be the Debtor's involuntary banker merely to keep

its interest from being foreclosed upon by the next possible tax buyer.  So, her initial plan called

for no payments of real estate taxes at all in order to paint a false portrait of a debtor reducing her

expenses to show "changing circumstances."  When called on said failure, the Debtor blithely

and  falsely claimed to be putting aside sufficient funds on a monthly basis to meet that

obligation when she obviously was not.  The case was primarily about her failure to pay real

estate taxes; yet, she continued to fail to do so.  If the Debtor cannot bring herself to meet her

obligations when her plan is not yet confirmed, can there be any reasonable expectation that she

will do so – let alone make her plan payments for the next five years – once the plan is

confirmed ?  Does anyone not assume that when she fails to make payments – and she has for the

last six years and will do so in the future – that she will do this all over again as she done so

often before?  The next installment of real estate taxes are due in a couple of weeks.  She has

claimed that her children – who live on the Property and obtain the benefit of its use –  make

approximately $9,000 a month.  Does anyone reasonably that the installment will be paid?  If

not, then this farce must end.

　　　　And the unsecured creditors are not treated any better.  Student loans are not

dischargeable.  Yet, her original Chapter 13 plan and the proposed amended plan promised to

pay almost nothing while she lives in a Property that has enough equity to pay a majority of that

debt either through sale or through borrowing.  Moreover, her claim that her plans do not profess

to discharge these debts ring hollow when she proposes to pay off a few hundred dollars under her proposed plans over a period of years, the total of which would not even meet the additional interest due. And although her siblings owe the majority of the tax debt outstanding, she made no effort over the year and two cases to make them pay anything so that her creditors can be paid. She made no effort to comply with the Code requirement to use all of the assets to propose a plan. That is neither the spirit of the Code nor fair. It is the epitome of bad faith.

All of the above is evident from the record and non-rebuttable. The Bankruptcy Court was clearly in error when it refused to do a proper bad faith analysis and failed to dismiss the case on that basis. As a result, the lower court's decision to not find bad faith must be reversed.

**C.** **Debtor Has Never Committed to Pay Her Unsecured Creditors an Amount Not Less than the Estate Liquidation Amount.**

As stated above, the Bankruptcy Code mandates that the Debtor was required to propose a plan which would pay the creditors an amount not less that the creditors would receive if the estate of the Debtor would be liquidated under Chapter 7 of the Code. 11 U.S.C. §1325(a)(4). Under the Proposed Amended Plan, the Debtor only proposed paying the unsecured creditors pennies on the dollar although the Property itself – in which she has a 100% interest in under the laws of joint tenancy and through which all tenants have a duty to pay their pro rata share of the taxes – is worth more than enough to pay her creditors. And the Debtor consistently has made no attempt to do so.

In order to have properly proposed a plan complying with §1325(a)(4), the Debtor had to propose paying approximately $1,210 per month – not including actually paying the current real estate taxes and property insurance. That would have represented the liquidation value of the estate. Instead, every plan she proposed shortchange Elm by not paying full interest mandated

by Illinois law to tax buyers. Also, ignoring the right of redemption issue, under Debtor's claim of said right to redeem, said proposed plans shortchanged the unsecured creditors by paying them 4% on the dollar rather than the approximate 53% that liquidation would call for. By not even attempting such a proposal, the Debtor was gaming the system and forestalling Elm and the other creditors for more than a year while paying (and intending to pay) nothing.

As a result, the Bankruptcy Court could not have come to any other conclusion then that the case and the plans were filed in bad faith. The Debtor has not met any obligation: she did not pay real estate taxes, obtain property insurance, propose to pay unsecured creditors any significant money, complete and file correct, truthful and complete Schedules, or truthfully disclose the monthly amounts the Debtor's children would actually be willing to pay in. Add in the fact that there is no case allowing the plan attempt to reinstate an already expired redemption right, Love could use this Case to illustrate the many factors that prove bad faith.

It is not the objective of the bankruptcy laws to confer windfalls on debtors. *Matter of Chicago, Milwaukee, St. Paul & Pac. R. Co.*, 791 F.2d 524, 527 (7th Cir. 1986). The Debtor tried to obtain a windfall by falsely and improperly shielding her assets from creditors by ignoring her siblings' responsibility for the debt so that she would not have to pay anything to the unsecured creditors. She and her numerous immediate family have lived on the Property for a year without paying any of its rightful expenses or protecting it against loss. Instead, this obfuscation and delay serves to continue this freeloading scheme and it frustrates the rights of creditor. One cannot claim the right of ownership and then abdicate any responsibility for same ownership. This is the very type of serial case where the Bankruptcy Code was recently amended to forestall. Nothing changed. Nothing was different. The Debtor exhibited the same disdain for the Code and her obligations and just hid her scheme better. The automatic stay

should never have been extended and the case should have been dismissed outright. Thus, by ignoring all of this behavior, the Bankruptcy Court was clearly erroneous in extending the automatic stay, denying a request for a bad faith finding and a dismissal on that basis. Those rulings must be reversed.

**CONCLUSION**

For all of the foregoing reasons, Elm Limited respectfully submits that the decision of the Bankruptcy Court ordering case be dismissed for failing to file a confirmable Chapter 13 should be affirmed; although it also submits that the Bankruptcy Court's denial of dismissal for bad faith and granting of the extension of the automatic stay be reversed.

Respectfully submitted:

ELM LIMITED

By:_____
       HAROLD L. MOSKOWITZ
       55 West Monroe Street
       Suite 3950
       Chicago, Illinois 60603
       (312) 977-0223
       (312) 206-1436 (facsimile)

-40-

**PROOF OF SERVICE**

I hereby certify that on July 11, 2012, the digital version of the brief, was served by mailing copies by electronic mail, addressed to

Penelope ans Paul Bach
Bach Law Offices
P.O. Box 1285
Northbrook, Illinois 60065

and

Tom Vaughn
200 South Michigan Avenue
Chicago, Illinois 60604

_____/s/ Harold Moskowitz_____
Appellee/Cross-Appellant's Attorney

HAROLD L. MOSKOWITZ
55 West Monroe Street
Suite 3950
Chicago, Illinois 60603
(312) 977-0223
ARDC: 3128347

Attorney for Appellee, Elm Limited